CASE 22—PETITION ORDINARY—FEBRUARY 1.

# Chrisman vs. Bruce.

APPEAL FROM THE JESSAMINE CIRCUIT COURT.

1. See the opinion for a statement of the facts held sufficient to subject a judge of an election to damages for unlawfully refusing to receive the vote of a qualified voter.

2. The motive and intent with which an act is done, is a matter of presumption, depending on the nature of the act, and the circumstances attending its commission. (1 *Greenleaf*, secs. 33, 34.)

3. A judicial officer of any grade who knowingly and willfully renders a decision contrary to law, must be presumed to have acted from a bad motive, and proof of the act will, of itself, authorize the jury to presume the motive. (18 *B. Mon.*, 494, 693.)

HUNT & BECK, for appellant, cited 2 *Raym.*, 950; 18 *B. M.*, 497, 711; 11 *Johns.*, 120; *Sess. Acts,* 1861–2–3, *p.* 70; 1 *Rev. Stat.*, *p.* 15.

W. R. WELCH, on same side, cited *sec.* 8, *art* 2, *Const. of Ky.*; 3 *Marsh.*, 76; *Rev. Stat.*, *chap. on elections;* 2 *Mass.*, 236; 11 *Mass.*, 350; 9 *Pick.*, 312; *Co. Litt.*, 197.

CHIEF JUSTICE DUVALL DELIVERED THE OPINION OF THE COURT:

This action was brought by Chrisman against Bruce to recover damages for the refusal of the defendant, as judge of an election, to receive the vote of the plaintiff.

On the trial in the court below, the jury, in conformity to a peremptory instruction given by the court, found a verdict for the defendant, and the action was dismissed. From that judgment the plaintiff has prosecuted this appeal.

It is alleged in the petition, in substance, that on the 3d day of August, 1863, in the county of Jessamine, an election was held for the purpose of choosing a Governor and other officers, and that the plaintiff was, at that time, a free white male citizen, more than twenty-one years of age, and had resided in said county more than forty years, and in the precinct more than sixty days immediately preceding the election, and was a resident of said county and precinct when the election was held; that he presented himself at the polls in said precinct to cast

his vote for certain candidates for the offices aforesaid, claimed the right to vote, and made the facts as to his age, residence, and citizenship appear to the satisfaction of the defendant, who was one of the judges conducting the election, and to the satisfaction of the judge associated with him ; that he was illegally required to swear as a condition precedent to his right to vote, and did swear, that he had not been in the service of the so-called Confederate States, in either a civil or military capacity, nor in the service of the so-called Provisional Government of Kentucky, in either a civil or military capacity, and that he had not taken up arms against the military forces of the United States or the State of Kentucky, and that he had not given voluntary aid and assistance to those in arms against said forces, which oath was required by the provisions of a recent act of the General Assembly, and which act is unconstitutional and void ; that after he had thus fully shown to the satisfaction of the defendant and his associate that he was a qualified voter, and after he had complied with all the requirements of the act aforesaid, the defendant further questioned the plaintiff, and required him to answer, on oath, whether he was in favor of furnishing the General Government with men and money to put down the rebellion ; he answered he was, with restrictions— he did not want them to take his negroes; whereupon the defendant and his associate, well knowing that the plaintiff was legally entitled to vote at said election, did, notwithstanding such knowledge, unlawfully, and under the influence of improper and corrupt motives, refuse to receive plaintiff's vote, or allow him to cast his vote, whereby he could not, and did not vote ; and prays judgment for $10,000 damages, &c.

The defendant filed an answer, to which the plaintiff demurred, and the demurrer was " sustained *pro forma.*" He then filed an amended answer, in which he does not controvert, specifically or generally, the material facts alleged in the petition, except that which charges him with having willfully, and under the influence of impure and corrupt motives, rejected the vote of the plaintiff. He alleges " that the plaintiff, Henry M. Chrisman, is a disloyal man ; that he disfranchised himself by publicly advocating the cause of, and giving aid

and comfort to, the so-called Confederate States, who are levy-ing war against, and endeavoring to overthrow the constitu-tion of the State of Kentucky and of the United States ;" that the acts mentioned were committed by the defendant before the election held on the 3d day of August, and after the 1st day of May, 1862 ; that the plaintiff is not a qualified voter under the laws of this State, and the defendant was in duty bound to reject his vote because he did not believe him to be a qualified voter, and that he was governed in his action as judge by the laws of Kentucky. That the Major General commanding this Department issued an order declaring the State of Kentucky under martial law, which order the defendant was bound to obey, and reject the vote of any disloyal person; and he did reject plaintiff's vote as that of a disloyal person, embraced by, and coming within the scope of, said order; and he therefore relies for protection from all damages upon the laws of the State of Kentucky, and upon the said order of the Major General commanding.

The facts set forth in this answer were held, on demurrer, to constitute a valid defense to the action, and the parties went to trial on the issues thus formed. But two witnesses testified, and they were introduced by the plaintiff. They proved the qualifications of the plaintiff, as a voter, with respect to his age, citizenship, and residence, and that these qualifications were well known to the officers of the election. The witnesses also detailed what occurred at the time the plaintiff offered to vote, substantially as follows : That the plaintiff, on demanding the right to give his vote, was, in the first place, required to take the oath prescribed by the act referred to in the statement of the pleadings, which requirement was complied with ; he was thereupon required, as a further condition, to answer whether he was in favor of men and money to put down the rebellion; the plaintiff answered that he was, with restrictions—he did not wish his negroes taken ; the defendant then told the plain-tiff that he could not vote, and regretted being compelled to reject him.

Whether upon the facts thus admitted, expressly and by im-plication, in the pleadings, and proved on the trial, the court

below properly withdrew the case from the jury by instructing them to find for the defendant, is the question now to be decided.

The question is an important one, involving interests and consequences of great moment, as well to the public as to the citizen.

The courts of Massachusetts, and perhaps of some of the other States, have adhered to the doctrine of the English cases, which decide that an action is maintainable against officers who preside at an election for refusing the vote of a qualified voter, even though they may have exercised an honest and fair judgment on the question before them.

This court has, however, adopted a more equitable and consistent rule, and which more adequately protects such officers in the faithful discharge of their duties. In passing upon the qualifications of a person offering to vote, the judge of the election acts judicially, and is not unfrequently called upon to determine legal questions of great difficulty and doubt. To hold him responsible, in such cases, for a mere error of judgment by which a citizen may have been illegally deprived of his right to vote, would be unjust in principle and unwise in policy; for the natural result would be to deter honest and capable men from accepting an office attended with such hazards. Hence, in the case of *Morgan vs. Dudley* (18 *B. Mon.*, 711), the rule was distinctly announced and acted upon, that, as every human tribunal was liable to err, no judge, even of the most inferior one, should be held responsible for a mere error of judgment committed in the regular discharge of his official duties, and that, although the judge of an election may err in determining upon the legality of a vote offered to be given, and thus reject a legally qualified voter; yet, if the decision was the result of a mere error of judgment, and was not induced by improper motives, no action can be maintained on account of such erroneous decision.

But this doctrine, whilst it thus affords protection to the officer in the honest discharge of official duty, does not deny redress to the citizen, who has been willfully and knowingly deprived of his right to vote. It is an invaluable right. As

Chrisman vs. Bruce.

was said by Lord Holt in a celebrated case, " a right that a man has to give his vote at the election of a person to represent him in Parliament, there to concur in the making of laws which are to bind his liberty and property, is a most transcendent thing." (*Ashley vs. White*, 2 *Raym.*, 950.) Here, it is the fundamental right; all other rights, civil and political, depend on the free exercise of this one, and any material impairment of it is, to that extent, a subversion of our political system. Hence the care with which any invasion of this right, from every possible source, has been guarded against. The constitution declares that " all elections shall be *free and equal;*" that " the privilege of free suffrage *shall* be supported by laws regulating elections, and prohibiting, under adequate penalties, all undue influence thereon from power, bribery, tumult, or other improper practices." The Legislature have complied with this mandate by the enactment of laws appropriate to its object. Severe penalties are denounced against persons giving their vote without having the requisite qualifications; also against persons giving or receiving a bribe; also against persons who shall forcibly break up, or attempt to break up or prevent the lawful holding of an election, or who shall so obstruct the same as to prevent any qualified voter from giving his vote; also against any officer of an election " who shall act corruptly, or with manifest partiality" in the discharge of his duty as one of a board for comparing the poll-books, &c. (*Sec.* 3, *art.* 12, *chap.* 32.) And by *section* 8 of the same article : " Any judge, sheriff, or clerk who shall receive, or assent to receive or record a vote at an election, at any other time or place then that lawfully appointed; and any judge or sheriff who shall *knowingly and unlawfully* receive the vote of any other than a qualified voter, or *so* refuse to receive the vote of a qualified voter, shall, for every such offense, be imprisoned from one to six months, or fined from fifty to five hundred dollars, forfeit any office he then holds, and be disqualified from ever holding any office."

Such are some of the safeguards which the constitution and laws have provided for the protection of this " transcendent right." But this is not all. The refusal, knowingly and

willfully, to receive the vote of a qualified voter, is not only a public offense, subjecting the offender to fine, imprisonment, and disfranchisement, but, as we have already seen, it is a personal wrong for which the law holds the wrong-doer responsible in damages to the injured party. This responsibility affords probably a more efficient practical security against wanton violations of the elective franchise than the penal statutes referred to, because more easily and more likely to be enforced. It becomes important, therefore, to ascertain with some degree of precision the grounds on which such responsibility rests.

It appears from the bill of exceptions that the defendant moved the court for the peremptory instruction, "upon the ground that no *bad motive* in rejecting the plaintiff's vote was proven;" and thereupon the instruction was given. The inference is, that the instruction was based on the ground on which it was asked. It is therefore necessary to determine what amount of evidence, and what character of evidence, was necessary to establish the existence of the bad motive.

It would seem that there could be but little difficulty on this point. The motive or intent with which an act is done, is almost always a matter of presumption, depending upon the nature and character of the act, and the circumstances attending its commission. This presumption is said to be the result of a general experience of a connection between certain facts and things, the one being usually found to be the companion or effect of the other. (1 *Greenleaf, sec.* 33.) Hence, on a charge of murder, malice is presumed from the fact of killing, unaccompanied with circumstances of extenuation; and the burden of disproving the malice is thrown upon the accused. The same presumption arises in civil actions, where the act complained of was unlawful, because, as men seldom do unlawful acts with innocent intentions, the law presumes every act in itself unlawful to have been criminally intended, until the contrary appears. (*Ib.*, 34.) In view of these familiar and well-settled principles, it is perfectly clear that a judicial officer of any grade who shall, in the exercise of his functions, knowingly and willfully render a decision which is con-

trary to law, and which violates a right and inflicts an injury, must be presumed to have acted under the influence of a bad motive. In an action against. such officer, proof of the act would be sufficient to authorize the jury to presume the motive. It is a mistake to suppose that there is anything in the cases of *Morgan vs. Dudley, supra, and Caulfield vs. Bullock, (Ib., 494)*, in conflict with this general doctrine. On the contrary, they are in perfect harmony with it. The allegation in both cases was, that the defendant, " knowingly and willfully, with an unlawful intention, refused to receive the plaintiff's vote;" and the allegation was held sufficient, being very properly construed to mean that the defendant knew the plaintiff was entitled to vote, but had, notwithstanding such knowledge, willfully, and from improper motives, refused to receive his vote.

The question then to be decided on this record is, whether the facts before the jury conduced to show that the plaintiff was a qualified voter, and that the defendant knowingly and willfully violated the law by refusing to receive his vote. If so, the jury had a right to find that it was done with a bad motive.

Recurring again to the facts, we find that it is alleged and proved, and admitted by the pleadings, that the plaintiff was, in respect to age, citizenship, and residence, a qualified voter, under the constitution and laws of the State; that upon claiming to exercise his right as such, he manifested his legal qualification as a voter to the satisfaction of the defendant and of his associate; that on being required, he took the oath prescribed by the statute; that he was further required to answer on oath whether he was in favor of furnishing men and money to put down the rebellion, to which he responded as already stated; and that, *thereupon*, his vote was rejected. On the part of the defendant no attempt was made to prove any of the matters of defense set up in the answer.

Such was the case as made out before the jury. It was simply the case of a legally qualified voter, known to be such by the defendant, who, without excuse or even pretext, was denied the exercise of his right. Upon this case the court

below held that the defendant was not responsible in damages. In that decision we cannot concur. To require additional or stronger evidence either of the act of the defendant or of the motive which actuated him, to authorize the jury to find for the plaintiff, would be practically to deny all remedy for such a wrong? What excuse or pretext was there, so far as the record shows, for rejecting the plaintiff's vote, except his response to the defendant's interrogatory? And who would say, as matter of law, that that response afforded the slightest justification of the wrong. The jury were authorized to presume that this was not the case of a mere error of judgment, committed by the defendant in passing upon the qualifications of a voter. No question as to qualification was raised or decided. The plaintiff's vote was refused for no other reason, and on no other ground, than his expression of the wish that his negroes should not be taken. The defendant avers in his defense that he was governed in his official action by the laws regulating elections, and the fact of his appointment affords a presumption that he was not ignorant of those laws. It was, therefore, for the jury to determine, upon the facts before them, whether, in the light of those laws, the rejection of the vote, upon such a pretext, was the result of an honest, though erroneous, conviction of the judgment, or whether it was not the result of an improper motive, influencing the defendant to commit a wanton and intentional violation of the plaintiff's clear and well understood legal right.

What their determination might or should have been is a matter with which we have nothing to do, and in regard to which we express no opinion. We merely decide that the evidence in this record would have sustained a verdict for the plaintiff; and that the jury should, for that reason, have been allowed to pass upon it.

Nor is it deemed at all material, as the case now stands, to consider the several matters of defense set up in the answer, the sufficiency of which was called in question by the demurrer.

For the reasons stated the judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with the principles of this opinion.