### Reynolds et al. v. Perkins.

(Decided Oct. 11, 1938.)

C. S. LANDRUM and JAMES PARK for appellants.

MAUREY KEMPER, W. H. MILLER, DAVID C. HUNTER and LETCHER SAUNDERS for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

At the regular November, 1935 election, James Perkins presented himself as a voter in Little Hickman precinct 9 in Jessamine county and demanded that the officers of the election deliver to him a ballot to be voted by him. His right to vote was challenged by a duly appointed challenger of one of the political parties on the ground that he was not a resident of that precinct or of Jessamine county. After some discussion between him and the election officers the judges of the election disagreed concerning the right of Perkins to vote so the matter was left to the sheriff of the election and upon his vote and that of one of the judges the right of the voter to receive and vote a ballot was denied.

Thereupon, he instituted this action against Pollard Reynolds and Buford Teater, the election officers who denied him the right to vote, and after setting up the necessary legal qualifications entitling him to vote in such precinct at the November election alleged in substance that although well knowing that he was a legal voter and entitled to vote in that precinct the defendants "fraudulently, knowingly, wrongfully, corruptly and maliciously refused to deliver to him a ballot enabling him to vote in said election and as a result he was deprived of his right of suffrage causing him great humiliation and distress of mind whereby he was damaged in the sum of one thousand dollars ($1,000.00)," for which he prayed judgment.

Trial before a jury resulted in a verdict and judgment for plaintiff in the sum of $200, and the defendants are here on motion for appeal.

The first ground argued for reversal is that the court erred in not sustaining appellant's motion for a peremptory instruction because election officers who rejected his vote acted judicially and are not liable in damages for erroneous decisions unless they acted corruptly, fraudulently or maliciously and there is no evidence that the officers so acted in this instance.

The evidence shows that appellee had for a number of years owned and lived on a farm in the precinct in which he offered to vote but that about two years prior

to the election he and his wife moved their household effects to Lexington where they had continued to live but left their livestock and farm implements upon his farm which he let or rented to others. He made frequent trips back to the farm. After moving to Lexington he worked in a tobacco warehouse during the tobacco season and at other seasons peddled vegetables from a truck which he licensed in his name, giving his residence at some street in Lexington. He testified that his reason for leaving the farm was the health of his wife who had to undergo some surgical operation and that he went to Lexington in order to be near the physicians who treated her; that it had always been his intention to return to the farm when his wife had fully recovered her health; that he continued to pay poll tax in Jessamine county and to vote in the precinct where the farm was located in previous elections and after he moved to Lexington. When appellee was first denied the right to vote he went to Nicholasville and returned to the voting place with the county attorney, the sheriff and one of the election commissioners who were admitted into the voting place with him. The matter of his right to vote was then discussed and the county attorney and other parties advised the election officers that appellee had a right to vote in that precinct and the county attorney read to the officers from an opinion of this court which he thought sustained his view of the matter. There is a conflict in evidence as to whether appellee was requested to make or offered to make the affidavit prescribed in section 1477a, Kentucky Statutes. He testified that he requested that such affidavit be prepared and indicated his willingness to sign it but that appellants refused to make out or furnish him with the necessary affidavit.

Section 1477a, supra, provides in effect that in the event of a disagreement among the officers as to the qualifications of one who offers to vote, one of the judges shall administer the oath prescribed in the form set out in the section and shall correctly fill out with ink the blanks in the prescribed affidavit and require the person offering to vote to subscribe his name thereto and upon the failure of the voter to do so he shall not be permitted to vote; but if the voter does sign and swear to the affidavit and no counteraffidavit is filed, he shall be permitted to vote. Both of the appellants testi-

fied positively that appellee stated that he would not make an affidavit. The officer who had agreed that appellee might vote could not remember what was done or said regarding the affidavit. It appears in evidence that other voters had been denied the right to vote in this precinct prior to the time appellee offered to vote on the ground that they had moved out of the precinct and appellants testified that they believed appellee was disqualified on the same ground since they knew he had moved to Lexington where he had lived and engaged in business for about two years. There is no evidence that the county attorney suggested that the affidavit be made out for appellee to sign or that he offered to make it out nor that appellee insisted that he be furnished such affidavit. If he had, then the judge of the election who had agreed that he might vote had a right under the statute and no doubt would have prepared the affidavit and administered the oath when it was signed by appellee. If this had been done and appellants in the absence of a counteraffidavit had denied appellee the right to vote there would have been no basis for appellants' contention.

In Morgan v. Dudley, 57 Ky. 693, 18 B. Mon. 693, 68 Am. Dec. 735, which was on action of a voter against the election officers for refusing to permit him to vote, this court, among other things, said:

"Whilst it is admitted to be essential to the just right of electors and also of candidates, that the right of suffrage should be freely exercised by the qualified voter, it is equally essential that those who are called by their official duty to preside at elections, and to decide on the qualifications of voters, should be sustained and encouraged, in the faithful and conscientious discharge of their duty.

"No action ought then, in principle, to be maintainable against the judges of an election, whose functions are to some extent judicial, for refusing to receive a vote, without alleging and proving that in so acting they were influenced by bad motives, and decided contrary to their own honest convictions of what was right and proper."

In Chrisman v. Bruce, 62 Ky. 63, 1 Duv. 63, 85 Am. Dec. 603, this court, in dealing with a similar question and after referring to the rule prevailing in some other jurisdictions, said:

"This court has, however, adopted a more equitable and consistent rule, and which more adequately protects such officers in the faithful discharge of their duties. In passing upon the qualifications of a person offering to vote, the judge of the election acts judicially, and is not unfrequently called upon to determine legal questions of great difficulty and doubt. To hold him responsible, in such cases, for a mere error of judgment by which a citizen may have been illegally deprived of his right to vote, would be unjust in principle and unwise in policy; for the natural result would be to deter honest and capable men from accepting an office attended with such hazards. Hence, in the case of Morgan v. Dudley, 18 B. Mon. [693] 711 [68 Am. Dec. 735], the rule was distinctly announced and acted upon, that, as every human tribunal was liable to err, no judge, even of the most inferior one, should be held responsible for a mere error of judgment committed in the regular discharge of his official duties, and that, although the judge of an election may err in determining upon the legality of a vote offered to be given, and thus reject a legally qualified voter; yet if the decision was the result of a mere error of judgment, and was not induced by improper motives, no action can be maintained on account of such erroneous decision."

From a recital of the evidence it will be seen that the legal question presented to the election officers in this instance was one of considerably difficulty and doubt, even for trained legal minds and there was a substantial basis for the contention that appellee was not a qualified voter in the precinct.

Apparently from the evidence there had been a general discussion concerning the right of appellee and others living outside the precinct to vote and appellee's right to vote was called in question by a duly appointed challenger. Since appellee did not have the county attorney or the judge of the election who favored him to prepare an affidavit required by statute as above indicated setting up his legal qualifications to vote and did not insist that that be done, it is apparent that he was in doubt concerning his right. In the absence of such affidavit having been made it is our conclusion that the evidence on the whole, when gauged by the standards

fixed in the quoted excerpts from authorities, fails to measure up to the requirements to establish willful, corrupt, or improper motives upon the part of appellants. We are therefore constrained to hold that appellants' motion for a peremptory instruction should have been sustained and that conclusion renders it unnecessary to consider or discuss other points argued for reversal.

Wherefore, the motion for appeal is sustained, and the judgment is reversed for proceedings consistent with this opinion.