## W. A. SQUIRES v. THE STATE.

No. 786.   Decided March 23, 1898.

### 1.   Libel—Indictment—Innuendo.

An indictment, without innuendo or explanatory allegations, is sufficient for libel which contains allegations of inducement; a colloquium, together with an allegation of publication, and which sets out an instrument not requiring any explanatory averment and alleging that the publication was libelous under the statute in two respects, to wit, that the libelee, who was a candidate for office was dishonest and that he had been guilty of an act which, though not a penal offense, was disgraceful to him as a member of society and calculated to bring him into contempt among honorable persons.

### 2.   Libel—Imputing Dishonesty to a Candidate for Office—What Constitutes.

In order for matter published as to a candidate for office to be libelous, there must be an imputation that he is dishonest, and therefore unworthy to hold office; that his want of honesty is such as would go to his personal integrity and would render him unfit to be trusted with official duties. That a candidate was unfaithful to the party which had nominated him, or that he was secretly conniving with an opposing party for its support at the time he is posing as the nominee of another, while it

would suggest a want of such high moral principle as should actuate the standard-bearer of a party, yet it would not indicate a want of such personal honesty as would render him unworthy of holding an office, and consequently a publication simply placing a candidate in such attitude would not be libelous in the sense that it charges him with dishonesty; and it was error for the court to submit the case to the jury upon this theory of libel.

**3. Same—Imputing an Act Disgraceful to a Member of Society and Calculated to Bring Him Into Contempt.**

The publication of a circular, ostensibly issued secretly by the candidate and nominee of one party abnegating the principles of his own party, and professing his belief in the principles of the opposing party, and thus treacherously seeking their support in his election, places him in the attitude of a hypocrite and traitor seeking office under false pretenses; and as such guilty of conduct calculated to bring him into disgrace and reproach among gentlemen and subject him to the contempt of all honorable persons. And such a publication being a libel in contemplation of our statute, it was error for the court in its charge to omit to submit the case upon this theory of libel.

**4. Placing Witness Under the Rule.**

While the matter of placing a witness under the rule is much in the discretion of the court, still, when the rule is invoked, all the witnesses should be placed under it, unless some good reason is shown.

APPEAL from the County Court of Clay. Tried below before Hon. F. J. BARRETT, County Judge.

Appeal from a conviction of libel; penalty, a fine of $500.

The opinion sets out the charging part of the information.

Defendant made a motion to quash the information for the following reasons, viz.:

"1. The language of the letter or circular alleged to be libelous, and the innuendoes and statements relative thereto, set forth in said information, show conclusively that the language alleged to be libelous had reference to a Democratic candidate for office and to the politics of said candidate; and the said language does not accuse him of any such dishonesty or criminal conduct as would constitute a libel under the penal laws of this State," etc.

"2. Said matters alleged in said pleadings do not charge a libel under the penal laws of this State, for the reason that they do not state that the defendant knew that L. J. Walker was a candidate for any office, or that any election was pending in Clay County, Texas, nor when any election was to take place in the future, nor that the principles of the 'Third' or 'People's party' were such as to make an individual dishonest or disreputable among the voters of the county, nor that there was any difference between the principles of the Democratic and 'People's party,' nor that defendant had any knowledge of said facts," etc.

This motion to quash was overruled.

No further statement is necessary, inasmuch as the case is disposed of on this appeal in discussion, in the opinion, of the sufficiency of the information and error in the charge of the court in submitting the case to the jury upon that phase of the information which does not charge a libel under the law, and in omitting to submit to the jury the only ground of libel charged by the allegations of the information.

*Stephens & Huff,* for appellant.—The court erred in refusing to quash the complaint and information.

When a person becomes a candidate for public office he puts his character in issue so far as respects his party or political affiliations and his qualifications for office, and language used concerning a candidate for office must, in order to be libelous, accuse the candidate of such dishonesty or criminal conduct as would render the candidate unworthy of the office sought by him, and the information, to charge the offense of libel, should have by a direct averment alleged that the principles of the People's party were such as to make an individual dishonest or disreputable among the voters of the county, and it should have shown wherein such principles were dishonest, and it should have shown that defendant had knowledge of the fact that the principles of the People's party were dishonest and the members of such party disreputable persons.

The gist of both counts of the information is that L. J. Walker's political convictions were maliciously misrepresented by said circular letter, in that he was made to say therein that he believed in the platform and principles of the People's party. Express Co. v. Copeland, 64 Texas, 358; Penal Code, art. 630; Johnson v. State, 31 Texas Crim. Rep., 569; Briggs v. Garnett, 56 Am. Rep., 274; Moak's Underhill on Torts, 146; Addison on Torts, 1091; State v. Burnham, 31 Am. Dec., 217; 2 Kent's Com., 20.

Now, suppose for the sake of argument that appellant had signed and sent out to the voters of Clay County the above circular letter concerning L. J. Walker, then a candidate, charging him with being in sympathy with and believing in the doctrines of the People's party, would such a circular letter have been libelous without proof that the principles of the People's party were dishonest or treasonable and such as would subject him to a criminal prosecution? We think not. We think that the Penal Code, article 630, and the case of the Express Printing Company v. Copeland, 64 Texas, 358, are conclusive on this point. Mr. Bishop, in his work on Non-Contract Law, says: "But the mere written accusation of something assumed to be morally dishonest, while it accords with the law, is not libelous."

It is not alleged in the information, and it was not proven on the trial, what the principles of the People's party were, and it is not alleged or shown that they were dishonest, treasonable, or criminal; and in the absence of such proof it can not be presumed that they are criminal, etc., hence the motion to quash the information should have been sustained and the motion for a new trial and in arrest of judgment should for the same reasons have been granted.

There being no evidence in this case showing that it is libelous to be charged with being in sympathy with and believing in the platform and principles of the People's party, and there being no evidence showing that said Walker would have been disgraced as a member of society had

he so believed, the jury should have been given the sixth and seventh special instructions asked by the defendant.

The eighth special instruction asked by defendant is as follows: "You are further charged that it is no offense to make a true statement of facts or to express opinions as to the integrity or other qualifications of a candidate for office, and if you find that at the time said circular letter was made and circulated (if you find it was made and circulated by defendant) that said L. J. Walker was a candidate for county clerk of Clay County and that the facts stated in the circular letter alleged to be libelous were true, or if the defendant had probable cause for believing them to be true, then you will find him not guilty."

The evidence of Noah and Ward Risley, of Smith and Tooly, show that defendant knew from statements of said witnesses that L. J. Walker was a Populist, and Noah Risley says he told defendant Squires that they (the Democrats) had a black sheep in the flock in the person of Mr. Walker, and that he was a Populist.

This direct and positive evidence called for special charge number 8 unquestionably, and the court erred in refusing it. White v. State, 18 Texas Crim. App., 57; Johnson v. State, 31 Texas Crim. Rep., 464; Johnson v. State, 31 Texas Crim. Rep., 569; Penal Code, arts. 630, 642; Const., art. 1, sec. 8; Copeland Case, 64 Texas, 358.

The court erred in not charging the jury that if the defendant believed the charges alleged in said circular letter to be true, and if they were privileged communications, then he would not be guilty of libel as charged.

Neither count in the information stated how the alleged libel was circulated or published. Neely v. State, 23 S. W. Rep., 798.

The court erred in allowing any testimony to be introduced upon the trial of this cause as to the publication of said libelous matter, because there was no averment in the information as to the manner of publication or of the person or persons to whom it was addressed, or by whom it was seen or read, or that the names of such persons were known to complainant. Willson's Crim. Stats., art. 1960; 2 Texas Crim. App., 297; Neely v. State, 23 S. W. Rep., 798.

*Joe E. Cockrell,* also for appellant.—The information is defective and charges no offense, because:

1.   The language on its face is clearly not libelous—so clearly not that comment is unnecessary—and the extraneous matter alleged is not sufficient in substance to show its libelous character, and is not alleged in proper form. I may state in brief that the gist of the libel attempted to be charged is this: Walker, the prosecuting witness, was Democratic candidate for county clerk of Clay County, being the regular nominee of that party. Appellant wrote a circular letter in his (Walker's) name to the People's party club, claiming that he (Walker) was in sympathy with that party and believed in its platform and principles; expected that party to ratify his nomination and was disappointed at its failure to do

so, and solicited the support of said party in his race and promised two years hence to affiliate with and advocate its principles should said party be successful in the election, and if the People's party failed, he believed the American Protective Association party to be the coming party; that he (Walker) had no faith in the principles advocated by either the Cleveland-Clark goldbug Democrats or Hogg silverite Democrat parties. Such is the substance of the charge against appellant. To state the charge in substance more concisely, appellant wrote of and concerning Walker, while the latter was a Democratic candidate and nominee, that in fact he was in sympathy with the People's party and its teachings, and had no faith in the principles advocated by either a "Cleveland-Clark goldbug Democrat or any Hogg silverite Democrat."

Now as to facts not charged in the information: It is not alleged that Walker was the nominee of either the "Cleveland-Clark goldbug Democrats" or the "Hogg silverite Democrats;" nor which of these parties, if either, was the Democratic party; nor what were the principles advocated by the People's party, the American Protective Association party, or the Democratic party, or any of its numerous progeny; nor that there was any such difference in the fundamental or characteristic principles of said several parties by reason whereof a man would make himself infamous to believe in the principles of one and accept office at the hands of another; nor do the allegations show that it would be improper or inconsistent in a Democratic nominee to be disappointed in not having his nomination ratified by the People's party; nor that such nominee might not consistently take it as a favor and appreciate the aid and support of said party; nor does it appear that the People's party had a candidate against said Walker.

In the absence of any or all of these allegations, we submit that the information is wholly defective, unless the court can take judicial knowledge of all the characteristic principles of said several political parties and their collateral kindred; if the court can do this, judicial knowledge will be acknowledged to be of the most comprehensive, discriminating, and differentiating kind. I have been unable to find any case either affirming or denying that courts may take judicial knowledge of the principles advocated by political parties.

2.   Said information is further insufficient for the reason that the language on its face not appearing to be libelous, the meaning intended to be conveyed, after stating proper matters of inducement, should have been set forth by innuendo, showing the particular language that was libelous and the meaning intended to be conveyed by the language as used; this can not be done by a narrative statement, as is attempted, of the surroundings of the parties. Evidently all the language set forth is not and could not be libelous, yet the information sets it all out as constituting the libel, making no distinction between the matter that might be libelous and what could not be, attempting thus to make the colloquium perform the office of the innuendo also. As to the office of each of these words I refer to Carter v. Andrews, 16 Pick., 6.

3.   In so far as the information charges the "publishing and circulation" of the libel, it is insufficient in that it does not set forth how it was published; it does not state facts. An information must set forth the offense in plain and intelligible words. Code Crim. Proc., art. 466. The precise point as to the necessity of setting forth the method of publication has not, so far as I know, been raised in this court, though I think it is the practice to do so; as, for instance, that the matter was published in a certain newspaper or by reading to a certain person. In slander it has been held necessary to name the person in whose presence the words were spoken. A criminal pleading ought at least to be as certain as a pleading in a civil action, and I believe there is no question but that in such action the pleader would have to set forth how the publication was made. The point here raised has been expressly decided in a late case by the highest tribunal in New York. I refer to the case of the People v. Stork, 32 Northeastern Reporter, 1046, as conclusive, being based on a similar statute. I shall attempt to add nothing to the reasoning in that case. If that ruling is followed the case should be reversed, because the court submitted to the jury not only the issue as to making but as to publishing and circulating the alleged libelous matter. And the conviction might have been had for the publishing and circulating, for the proof is almost conclusive that appellant did not make the writing; or to state it more accurately, there is a total absence of proof that he did make or contrive it.

*W. T. Allen,* County Attorney of Clay County, for the State.—It is insisted by counsel for appellant that the court erred in overruling the motion to quash the complaint and information; that the same does not show that the publication, under the circumstances set forth in the information, was libelous. It is alleged in the complaint and information that the alleged libelous circular letter, published and circulated under the circumstances as set forth in the information, conveyed the idea (1) "that the said L. J. Walker had been guilty of an act which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons; and (2) that he was a candidate for office and was dishonest, and therefore unworthy of such office." It will be seen that the information set forth the offense in the language of the statute (Penal Code, article 622), but it is urged that it should have alleged that it is libelous to charge a man with being in sympathy with the People's party, and believing in the principles enunciated in their platform, and having no faith in the principles advocated by the different factions in the Democratic party.

Now, we submit to the court that it depends altogether upon the extraneous facts and circumstances, and the position occupied by the party alleged to be libeled, as to whether this kind of a charge would be libelous or not. Certainly it would not be libelous to make such a charge against a member of the People's party, but for a man who belongs to a

political party whose platform and principles oppose those of the People's party, and who has accepted a nomination for office and become a standard bearer in his party, to write a confidential secret circular letter to the clubs of the People's party, stating therein that he was in sympathy with their platform and the principles enunciated therein, and denounce the principles advocated by all the factions of his own party, would be such an odious act of perfidy and hypocrisy that no honorable man could look upon him with any feeling other than that of the most profound contempt. No one would say that it was disgraceful for an officer of the English army to aid and assist the English army in carrying on the war against the colonies, but when Arnold, who was professing loyalty and allegiance to the revolutionists, made his perfidious agreement with the English army, he committed an act that was so disgraceful that all civilized nations looked upon it with the greatest of contempt and condemnation. What words in our language are expressive of contempt more than "traitor," "treachery," "perfidy," "hypocrisy?"

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of libel, and his punishment assessed at a fine of $500; hence this appeal.

Appellant made a motion to quash the information, on the ground that the language of the letter or circular alleged to be libelous, and the innuendoes and statements relative thereto set forth in said information, do not show that the accused was guilty of such dishonest or disgraceful conduct as would constitute a libel under the penal laws of this State, and for the further reason that the information does not show that L. J. Walker was a candidate for any office, or that any election was then pending in Clay County, nor when any election would take place, nor that the principles of the Third or Populist party were such as to make an individual dishonest or direspectable in the county, nor that there was any difference between the principles of the Democratic and Populist parties, nor that defendant had any knowledge of said facts. In order to present the matter clearly, we insert the charging part of the information, which is in two counts: That appellant "did without lawful authority, and with intent to injure the reputation of L. J. Walker, unlawfully, willfully, and maliciously make, publish, and circulate a certain written and printed statement purporting to be the act of another person, to wit, the act of L. J. Walker, of and concerning the said L. J. Walker, which said written and printed statement is to the tenor following, to wit: '(Confidential.) Henrietta, Texas, 1894. To the People's Party Club, Texas: I send you this circular letter to inform you that I am in sympathy with your party, and believe in your platform and the principles enunciated therein. I expected your party, at its convention held, to ratify my nomination as county clerk of Clay County. In this I was disappointed. Should the voters of your club think it advisable to aid me and give me your support at the coming November election, I will

take it as a favor, and appreciate the same. Should you support me by your votes, I will promise to affiliate and advocate the principles of your party two years hence, should it be successful at the coming election in November. Should the 'People's party fail at the coming November election, I believe the American Protective Association party will be the coming party of the future. I inclose you the platform of its principles, and you will please have the same read before your club. Yours respectfully, L. J. Walker. N. B. Please do not show this circular letter to any Cleveland, Clark, Goldbug Democrat, or any Hogg Silverite Democrat, as I have no faith in the principles advocated by either of them. Respectively, L. J. Walker.' And, at the time said written and printed statement was made, published, and circulated as aforesaid, the said L. J. Walker was a candidate for the office of county clerk of Clay County, Texas, and was then and there running for said office of county clerk of Clay County, Texas, as a Democrat, and was running for said office upon the Democrat ticket, and was then and there the nominee of the Democratic party of Clay County, Texas, for said office of county clerk of Clay County, Texas, and that said written and printed statement above set out is and was a libelous and malicious statement, and conveyed the idea that the said L. J. Walker was a candidate for the office of county clerk of Clay County, Texas, and that he, the said L. J. Walker, was and is dishonest, treacherous, and hypocritical in his political professions, and is and was therefore unworthy of said office of county clerk of Clay County, Texas; and said libelous and malicious statement conveyed the idea that the said L. J. Walker had been guilty of an act which, though not a penal offense, is and was disgraceful to him as a member of society, and the natural consequence of which act is and would have been to bring him into contempt among honorable persons. And, by way of second count herein, comes W. T. Allen, county attorney in and for Clay County, State of Texas, and presents in and to the County Court of said county that heretofore, to wit, on the 25th day of August, A. D. 1894, in said county of Clay and State of Texas, he, the said L. J. Walker, was a candidate for and running on the Democratic ticket for the office of county clerk of Clay County, Texas, and that he was running as a Democrat; that he was then and there a Democrat, and was not in sympathy with, and was not a believer in, many of the leading principles and doctrines of the so-called 'People's party,' otherwise known as the 'Third party,' which said last-named party was then and there opposing the nominees of the Democratic party of said Clay County, and was seeking to defeat their election to the various offices for which the candidates of the said Democratic party were running, and was specially seeking to defeat and were opposed to the election of him, the said L. J. Walker; that the said L. J. Walker was not then and there, and never had been, in sympathy with the American Protective Association, nor with its aims and purposes; that the said Walker was then and there a nominee of the Democratic party in said Clay County for the office of county clerk. That on, to wit, the last-named date, one W. A.

Squires, in said Clay County, Texas, without lawful authority, and with the intent to injure the reputation of the said L. J. Walker, and for the purpose of placing him in a false light before the people and the voters of Clay County, Texas, and for the purpose of defeating his election to the office for which he was then and there running as a Democrat, did, unlawfully, willfully, and maliciously make, publish, and circulate among the voters of Clay County, Texas, a certain written and printed statement, purporting to be the act of another person, to wit, the act of the said L. J. Walker, of and concerning the said L. J. Walker, which said written and printed statement is to the tenor as follows, to wit [here is copied the instrument contained in the first count, supra] ; that the said W. A. Squires, for the purpose of making said written and printed statement appear to be the act of the said L. J. Walker, unlawfully, wrongfully, maliciously, and without lawful authority, did then and there cause the name of him, the said L. J. Walker, to be affixed to said circular, whereby the statements therein contained were made to appear as the act, declaration, and statements of the said L. J. Walker ; that, in truth and in fact, said circular was not executed by him, the said L. J. Walker ; that he never authorized the execution of the same ; and that the same was not his act or deed, and was not made, printed, or circulated by or with his authority or consent, and the same did not contain his political belief and convictions ; that said statement was libelous and malicious, and was made, published, and circulated by the said W. A. Squires for the purpose and with the intent of defeating him, the said L. J. Walker, in the race for county clerk, as aforesaid ; that, at the time said W. A. Squires made, published, and circulated said libelous and malicious statement, the said L. J. Walker was a bona fide Democrat, and was not in sympathy with the so-called 'People's party,' and did not believe in their platform, nor in many of the leading principles therein enunciated—all of which the said W. A. Squires then and there well knew ; and that, with full knowledge of all of said facts, the said W. A. Squires unlawfully made and caused to be made, and circulated and caused to circulate, said libelous and malicious statement, for the purpose of injuring the reputation of him, the said L. J. Walker, and thereby causing him to be defeated for the office of county clerk, as aforesaid, at the election which was thereafter to be held on the 6th day of November, 1894 ; that said written and printed statement as above set out was and is libelous, and sought to convey, and did convey, the idea that the said L. J. Walker, while he was a candidate for said office of county clerk on the Democratic ticket, and while he was running as a Democrat, that in truth and in fact he was not a Democrat, but that he sympathized with, and was a believer in, the principles and platform of the so-called 'People's party,' and with the principles advocated by the American Protective Association ; and that he was dishonest, treacherous, and hypocritical in his political profession ; and that he was therefore unworthy of the confidence and support of the voters of Clay County for said office, and was therefore unworthy of said office. And

said circular further sought to convey, and did convey, the idea that the said L. J. Walker was thus guilty of an act which, though not a penal offense, is and was disgraceful to him as a member of society, and the natural consequence of which act is and would have been to bring him into contempt among honorable _persons, all of which the said W. A. Squires did on the day and date aforesaid, contrary to the form and statute in such cases made and provided, and against the peace and dignity of the State."

At common law, in a civil action, complaint for libel contained the following essential elements (see Townshend on Slander and Libel, sections 308-337, inclusive) : First. The inducement. "The office of this is to narrate the extrinsic circumstances which, coupled with the language published, affects its construction, and renders it actionable, where, standing alone and not thus explained, the language would appear either not to concern the plaintiff, or, if concerning him, not to affect him injuriously. This being the office of the inducement, it follows that if the language does not naturally and per se refer to the plaintiff, nor convey the meaning the plaintiff contends for, or if it is ambiguous and equivocal, and requires explanation by some extrinsic matters to show its relation to the plaintiff, making it actionable, the complaint must allege by way of inducement, the existence of such extraneous matter." Second. The colloquium, which is a direct allegation that the language published was concerning the plaintiff or concerning the plaintiff and his affairs, or concerning the plaintiff and facts alleged as inducement. Third. The fact of publication by the defendant, and the words published. It is held that not all the words need be published, but only such as are relied upon as libelous or slanderous. "It is sufficient to set out the words which are material, and additional words, which do not diminish or alter the sense of the words directly alleged, may be omitted. But enough must be set forth to show the sense or connection in which the words set forth were used; otherwise there will be a variance, even if the precise words laid are proven to have been spoken." Fourth. The innuendoes, which may be alleged in connection with the published matter, or follow it. The office of an innuendo is to aver a meaning of the language published. An innuendo means nothing more than giving point or meaning as explanatory of a matter sufficiently expressed before. It may serve for an explanation, to point a meaning where there is precedent matter, expressed or necessarily understood or known, but never to establish a new charge. It may apply what is already expressed, but can not add to nor enlarge nor change the sense of the previous words. If the words before the innuendo do not sound in slander, no meaning produced by the innuendo will make the action maintainable, for it is not the nature of an innuendo to beget an action. An innuendo helps nothing unless the words precedent have a violent presumption of the innuendo. The business of an innuendo is, by a reference to preceding matter, to fix more precisely the meaning. The office of an innuendo is to explain, not to extend, what has gone before, and it can not enlarge

the meaning of the words, unless it be connected with some matter of fact expressly averred. The innuendo "is only a link to attach together facts already known to the court." Applying these rules to the information, it will be seen that same contains what may be termed the "inducement," which, by the way, is held to be immaterial, whether it precedes or follows the alleged libelous matter; that it contains a colloquium, together with an allegation of publication. No innendoes appear to have been used, the pleader doubtless apprehending that the instrument in question, as set out, on its face required no explanatory averment in order to ascertain its libelous character or against whom directed. In addition to this, the indictment alleged that said publication was libelous, under the statute, in two respects: that, being a candidate for office, he was dishonest, and therefore unworthy of such office; and that he had been guilty of some act or omission which, though not a penal offense, was disgraceful to him as a member of society, and the natural consequence of which was to bring him into contempt among honorable persons. We belive the indictment was sufficient if the matter set out in the publication be slanderous. See Woody v. State, 16 Texas Crim. App., 252; Johnson v. State, 31 Texas Crim. Rep., 456; State v. Schmitt, 49 N. J. Law, 579, 9 Atl. Rep., 774.

In his criticism of the indictment, appellant insists that it merely means that defendant published of and concerning Walker that he (Walker) was a Populist, and that he had no faith in the principles advocated by the Democratic party; and that the distinctive principles of the two parties (Populist and Democratic) should have been averred, in order that it might be seen whether or not it was disgraceful to entertain the views of a populist and to eschew those of a Democrat. If the information in question contained no more than this, no doubt appellant's contention would be correct; but, when we read all the parts of the information, it affirmatively charges that the prosecutor, Walker, was a candidate of the Democratic party, and its nominee for the office of county clerk of Clay County; and that an election was then pending for said office; and that the People's party were then and there opposing the nominees of the Democratic party of Clay County, and were seeking to defeat their election, and especially were opposed to the election of the said Walker; and that said Walker, occupying the attitude of the nominee and candidate of the Democratic party for county clerk, wrote and caused to be sent out secretly a circular letter, marked "Confidential," of and concerning himself, to the effect that he was not in sympathy with the views of the party of which he was a candidate, but that he believed in the platform and principles enunciated by the People's party, whose support he was then secretly striving to procure—that is, we gather from the allegations here made that it was intended to charge that while Walker was openly posing as a Democrat, and availing himself of their support, he was at the same time, by a secret circular, undermining the party of which he was a candidate, and seeking the aid and support of the opposition, in a clandestine manner. Now, was this conduct dishonest as

applied to a candidate for office? The language of the statute is that, in order for the matter to be slanderous as to the candidate for office, there must be an imputation that he was dishonest, and therefore unworthy of such office. While, according to some definitions, "dishonesty," in its broader sense, might reach such conduct as was here attributed to the prosecutor, Walker, we do not believe the statute had reference to that character of dishonesty. But it means such want of honesty as would go to his personal integrity, and would render him unfit to be trusted with official duties. The mere fact that a person was unfaithful to the party whose nominee he may have been, or that, while he was the nominee of one party, he was secretly conniving with the other opposing party for its support, while it would suggest a want of such high moral principle as should actuate a party's standard bearer, yet it would not indicate a want of such personal honesty as would render him unworthy of holding an office.

Does the language and conduct stated by the circular, in contemplation of the statute, show that appellant imputed to the prosecutor, Walker, that he was guilty of an act disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons? We must confess that the answer to this question is fraught with some difficulty. In a general sense, it would certainly not be considered honorable to be a candidate of one party, and secretly connive with the opposition for its support. Such conduct, even among politicians, would be regarded as disreputable, and justly so; but is it the sort of conduct characterized by the statute as an act disgraceful to the person so doing as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons? We can conceive of a vast number of acts that would tend to disgrace a man in the eyes of society, and the natural tendency of which would be to bring such person into contempt among honorable persons. A number of acts which we may imagine might be on the border line. In such case it would be difficult to determine whether or not they were within the purview of the statute. It is always a question for the court to say whether or not the particular act attributed is libelous or not. Our Constitution provides: "In all indictments for libel, the jury shall have the right to determine the law and the facts under the direction of the court, as in other cases." See Bill of Rights, Const., art. 1, sec. 8. And article 748 of the Penal Code of 1895 is to the following effect: "The jury, in every case of libel, are not only the judges of the facts and of the law, under the direction of the court, in accordance with the Constitution, but they are judges of the intent with which a libel may have been published or circulated, subject to the rules prescribed in this chapter; and, in rendering their verdict, they are to be governed by a consideration of the nature of the charge contained in the libel, the general reputation of the person said to be defamed, and the degree of malice exhibited by the defendant in the commission of the offense." These provisions, as we understand them, authorize the court to judge

whether the particular matter charged comes within the definition of a libel under the statute, but in no wise curtail the functions of the jury as to the intent with which the libel may have been published. It will be borne in mind, as before stated, that the language—that is, the circular containing the libelous matter—is not equivalent to the mere declaration on the part of the appellant that Walker, the prosecutor, was a Populist. This language would not be libelous, but the indictment embracing the inducement and the circular in question contains far more than this. It contains the charge that the prosecutor, Walker, while ostensibly a Democrat and the nominee of the Democratic party, had written and signed a secret circular, and sent the same abroad to certain parties, abnegating a belief in the principles of the party whose cause he was openly espousing, and professing a belief in the Populist, the opposing party; thus treacherously seeking their support in his election. The indictment shows that, if said circular was true, he was acting the part of a hypocrite and a traitor; and certainly, in our opinion, if guilty of such conduct, it was calculated to bring him into disgrace and reproach among gentlemen, and should justly subject him to the contempt of all honorable persons; and we believe it was such an act as is within the contemplation of our statute on the subject. We hold that this charge in the indictment was a sufficient allegation of libel.

Appellant, by several bills of exception, objected to certain testimony. We believe that the testimony of Gorman and McWhorter was admissible. With reference to placing the witnesses under the rule, while this is a matter much in the discretion of the court, still, when the rule is invoked, unless some good reason is shown, all of the witnesses should be placed under the rule, and we see no good reason why the witness Walker should have been excused by the trial judge.

Appellant excepted to the charge of the court, and also asked a number of special charges which the court refused to give, and he reserved his bill of exceptions. These exceptions raised several material questions. The court, in the general charge, only instructed the jury with reference to the allegation of the information predicated on the proposition that appellant attributed an act of dishonesty to the prosecutor, who was a candidate for office, that rendered him unworthy of holding said office. As we have seen, the information is not libelous as to this charge, but was only libelous on the proposition that it attributed to the prosecutor Walker an act disgraceful to him as a member of society, and the natural consequence of which was to bring him into contempt among honorable persons. This latter phase of the case was not given to the jury at all. Appellant's special charges, while not correct, called the court's attention to this matter, as charges were presented embracing both views. Evidently, the jury responded to the charge of the court, and found their verdict upon a charge not authorized by law, as we have held same was not libelous. The court should have instructed them to ignore or disregard that portion of the information, and should have simply instructed them on the other proposition, substantially to the effect

that if they believed appellant made or published said circular under the circumstances stated in the information, and if they believed that, under such circumstances, the making or publication of said secret circular letter by defendant was of and concerning the prosecutor, and attributed to him an act disgraceful as a member of society, and the natural consequence of which was to bring him into contempt among honorable persons, they should find him guilty, and assess his punishment at a fine, etc. We do not undertake herein to lay down a precise form for a charge on this subject, but merely indicate in outline the character of charge which should be given. For the error of the court in failing to properly instruct the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*