## W. S. McCAULEY v. THE STATE.

### No. 1419. Decided December 20, 1911.

**Libel—Newspaper—Information—Innuendo.**

Where, upon trial of criminal libel, by a newspaper publication, the language used as a basis for the second count in the information, upon which defendant was convicted, could not be made to convey the meaning alleged in the innuendo averments in said count, but such averments gave to said language a meaning not ordinarily flowing therefrom, a motion to quash the information should have been sustained.

Appeal from the County Court of San Patricio. Tried below before the Hon. W. H. Baldwin, special judge.

Appeal from a conviction of criminal libel; penalty, a fine of $150.

The opinion states the case.

*Jones & Childers,* for appellant.—On question of insufficiency of information: Catulla v. Kerr, 11 S. W. Rep., 1058; Squires v. State, 45 S. W. Rep., 147; Atchley v. State, 56 Texas Crim. Rep., 569, 120 S. W. Rep., 1010; Newell's Defamation, Libel and Slander, pp. 619, 629.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—The appellant in this case is the editor of the Seagoville Enterprise, a newspaper published at Seagoville in Dallas County, and on or about the 11th day of November, 1910, he published the following article in his paper:

## "TELLING THE TRUTH."

"The Sinton Headlight says:

"District Court adjourned on Friday evening and from the Headlight's point of view it seems to have been too conservative to accomplish any good results. When grand juries wink at crime and one man exercises the authority of a Czar, crime will run rampant and towns must needs be shot up and the flower of our young men thus misguided will of necessity have to be shot down.

"The Headlight is a good newspaper that believes in boosting its home town, but at the same time, it waves the banner of purity, justice and fair play over the blood-stained sands of the little gulf coast town where the officers draw fat salaries and use the money to buy expensive bar fixtures for saloons that are owned and controlled by the county officials. Those foul smelling booze joints do a flourishing business and attract more boys than all the churches, manufacture drunkards by the hundreds yearly, whose only ambition and desire is to have more pool halls, saloons and sham ice cream parlors where the kids that are under age can drink booze, smoke cigarettes and tell vulgar tales unmolested.

" ' To tell the truth, Sinton is a Lolla-palusa;' when some good old soul gets so full of religion that he shouts 'amen' in church, the San Patricio County Courts are quick to adjudge him insane and hustle him off to an over-crowded bug-house.

" 'But the gang that drinks cheap booze, bombard the houses of peaceable citizens with beer bottles, 'whoopees' around town and makes the night hours hideous with their curses and vulgarity, are very seldom found in the grand jury room. 'They don't believe in interfering with a man's 'personal liberty' in San Pat (meaning San Patricio) County unless he is crazy and disturbs public worship by shouting 'amen' or glory hallelujah. The country is all right, the climate ideal, and money plentiful in the gulf coast country, but the man who has a bunch of boys to raise might as well move on to the next station called 'Hades,' for there is where the boys will land in a very few years anyway, unless they have a general clean up day down there in the near future."

Appellant was prosecuted for libel in publishing the above article, it being alleged it was circulated in San Patricio County. When tried, he was convicted under the second count in the information, which reads as follows: "Said false, malicious and defamatory statement, published, printed, sold and circulated as aforesaid, further states the following, to wit: 'To tell the truth, Sinton is a Lollo-palusa;' when some good old soul gets so full of religion that he shouts 'amen' in

church, the San Patricio County Courts are quick to adjudge him insane and hustle him off to an overcrowded bug-house.' Thus meaning and having reference to John McWhorter, who was adjudged insane in the County Court of said county, and thus conveying and intending to convey and did convey the idea, meaning and impression, that the said P. A. Hunter, while acting in his official capacity as county judge in the County Court of San Patricio County, sitting in the case against John McWhorter, for lunacy, he violated his dignity as a judge, and knowingly acted, ruled and instructed the jury trying the case falsely, in order that John McWhorter, a sane person, be adjudged insane, and is thereby guilty of malfeasance in office and not worthy of the office reposed in him. And further conveying and intending to convey and did convey the idea, meaning and impression, that the said D. Odem, while acting in his official capacity as sheriff of said county and State, was instrumental in sending one John McWhorter, a sane person, to the insane asylum by summoning such jurors which he knew, when selected to sit on such case, they would adjudge John McWhorter, a sane person, 'insane,' and that thereby the said D. Odem violated the oath of his office, was untrue to his official trust reposed in him, and is guilty of malfeasance in office. And further conveying and intending to convey and did convey the idea, meaning and impression, that the said Jas. G. Cook, while acting in his official capacity as county attorney of said county and State, was instrumental in sending one John McWhorter, a sane person, to the insane asylum, when he then and there knew at the time of such trial that John McWhorter was not insane, and that thereby the said Jas. G. Cook violated his oath of office, was untrue to his official trust reposed in him and is guilty of malfeasance in office."

Appellant filed a motion to quash this count in the information, alleging "that the language contained in the second count is not libellous, as it refers to the proceedings of the County Court as a court and is privileged under the laws of the State of Texas as referring to a judicial proceeding, and the innuendo materially changes, adds to and enlarges upon the true meaning of the language used in the publication and vitiates the information, for if said language refers to the case of John McWhorter, it does not imply that said John McWhorter was not insane, or that he was tried improperly, or that any officer violated any official oath or duty, or was guilty of any malfeasance in office, or any other misconduct, but on the contrary, implies that such action of the San Patricio County Court was regular, but uses this case only to compare the action of the said County Court in this kind of a case with its action in other kinds of cases; furthermore, the innuendoes do not show when John McWhorter was tried, or that he was ever tried, and it is not sufficiently shown that said P. A. Hunter presided at the trial as said county judge, or that he made any improper rulings, and if so, what they were. In other words, the language and the innuendo when taken together, do not connect said Hunter with the

trial of said John McWhorter, nor is there any allegation that the county attorney tried the cause or had any connection with it, or that the sheriff summoned the jury or knew about it, or that they were either in any manner properly or improperly, connected with said John McWhorter's trial. Insofar as the innuendo undertakes to do any of these things, it places upon the language of the publication a meaning of which it is not susceptible, therefore vitiates the information."

We are inclined to think the motion to quash this count in the information ought to have been sustained. It may be .that the editor meant all that he is said to mean by the innuendo averments; if so, he did not say it, and only by the exercise of a very vivid imagination can such inferences be drawn from the language used as a basis for the averments in this count. In the case of Squires v. State, 45 S. W. Rep., 147, this court held:

"The office of an innuendo is to aver the meaning of the language published. An innuendo means nothing more than giving point or meaning as explanatory of a matter sufficiently expressed before. It may serve for an explanation, to point a meaning where there is precedent matter, expressed or necessarily understood or known, but never to establish a new charge. It may apply what is already expressed, but can not add to nor enlarge nor change the sense of the previous words. If the words before the innuendo do not sound in slander, no meaning produced by the innuendo will make the action maintainable, for it is not the nature of an innuendo to beget an action. An innuendo helps nothing unless the words precedent have a violent presumption of the innuendo. The business of an innuendo is, by a reference to preceding matter, to fix more precisely the meaning. The office of an innuendo is to explain, not to extend, what has gone before, and it can not enlarge the meaning of words, unless it be connected with some matter of fact expressly averred."

Taking into consideration the language used by the editor, we do not think the innuendo averments are authorized under it, but that by such averments the pleader has added averments not deducible from the language used, and not authorized by that paragraph of the article, or the entire article, as published. In fact, the article subsequently avers in effect, (if in fact it refers to Mr. McWhorter) that he was "crazy and disturbed public worship," and is but a comment on the officers in their promptness to prosecute in this character of case, and not do so in other character of cases. In the case of Atchley v. State, 56 Texas Crim. Rep., 569, 120 S. W. Rep., 1010, Presiding Judge Davidson discusses this question of innuendo averments at some length, and holds that the "innuendo must not introduce new matter or enlarge the natural meaning of the words, but the meaning must naturally flow from the words used," citing authorities.

Because the language used as a basis for the second count in the information can not legitimately be made to convey the meaning alleged in the innuendo averments in said count, but such averments

give to it a meaning not ordinarily flowing from such language, and is an unauthorized and strained construction to give to such language, the court erred in overruling the motion to quash this count in the information.

The trial court, on motion, quashed the other counts contained in the information, and being of the opinion that this count should also have been quashed, the judgment is reversed and the prosecution is ordered dismissed.

*Reversed and dismissed.*