WILLIAM PRESCOTT ALLEN V. THE STATE.

No. 23028. Delivered June 20, 1945.
Rehearing Denied October 31, 1945.
State's Request for Leave to File Second Motion for Rehearing
Denied (Without Written Opinion) November 21, 1945.

The opinion states the case.

*Sidney J. Samuels,* of Fort Worth and *Carl Wright Johnson,* of San Antonio, for appellant.

*S. Truman Phelps,* District Attorney, *M. J. Raymond* and *Gordon Gibson,* Special Assistant District Attorneys, all of Laredo, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

On February 21, 1945, an opinion was announced in which the judgment was reversed and the cause remanded. Both appellant and the State filed motions for rehearing. Appellant insists that the case should not be remanded, but that the judgment should be reversed and the prosecution ordered dismissed; the State urges that the judgment should be affirmed. A further study of the record has resulted in a change of view from

some of those expressed in our original opinion, and said opinion is withdrawn and this opinion substituted in lieu thereof.

The conviction was for criminal libel, the punishment assessed being six months' confinement in the county jail.

Prosecution was under Sec. 2 of Art. 1275 P. C. which declares one guilty of criminal libel who, with intent to injure, publishes a malicious statement which conveys the idea that the person to whom the statement refers "has been guilty of some *act* or omission which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequences of which is to bring him into contempt among honorable persons." Arts. 1269, 1275, Sec. 2, P. C. It is not necessary to set out the other four sections of Art. 1275, as they are not relied on in this prosecution.

Appellant was the publisher of the Laredo Times, a daily newspaper published in Laredo, Webb County, Texas, with a circulation of approximately twelve thousand. He was also a member of Rotary Club of Laredo, a service club of said city, and a corporation. The Rotary Club, long prior to events hereinafter mentioned, had set up and provided what was known as the Student's Loan Fund, from and out of which loans were made to students for defraying expenses of an education. Such fund was administered by a Student's Loan Fund Committee of the club. Said committee was under the jurisdiction of the Board of Directors of the club. Some of the students to whom loans had been made were called into the military service of this country before final payments of the loans had been made. Just what efforts the student loan committee was making to collect from such students does not appear, save and except that a list of all the students to whom loans had been made was published in the club paper known as "The Gear," showing those who had paid the loans as due, and those who were delinquent. Among the delinquents were members of the military service in the Army or Navy. This publication in The Gear appears to have been made in November, 1943, and appellant took exception thereto. His position appears to be reflected in newspaper articles appearing in the Laredo Times, of date December 9 and December 17, that the club should not attempt to collect the loans from those students in the military service. He claimed that the efforts to make such collections were made by what he termed a Bundist un-American element in the club. In keeping with his attitude that such collections should not be pushed at this time, he addressed a letter to the club offering to resign

as a member of the club if a majority of the members of the club disagreed with this policy, as he said, "to Americanize the Club's Student Loan Fund Policy." No action appears to have been taken upon appellant's proposition at that time.

Such was the situation, as we have been able to glean it from this record, at the time of the publication on December 23, 1943, of the article which the State charges was libelous, and is set forth in the indictment, as follows:

"ROTARY BOARD COMMITS MAJORITY TO KICK PUBLISHER ALLEN OUT."

"Still dodging the issue of whether men in the armed forces should be hounded for payments on their student loans, the Rotary Club board of directors again has denied the more than 40 rank and file members of the organization the simple, American privilege of voting on a sporting proposition to resign from the club, submitted by Publisher William Prescott Allen of The Laredo Times.

"Still under the influence of Bundist, Hitler-minded influences within the organization, the 30 seconds necessary for a standing vote on whether Allen's resignation be accepted, has been denied for the third consecutive week. Apparently reading of the tremendous death tolls of American soldiers, sailors and marines at Tanarawa and in Italy, the money-minded, per-centage loving, collect-at-all-costs element from the former students or their parents, some of them widows, still has the whip hand.

"This behind the scene Bundist-minded group has the Rotary Club's financial interests so much at heart, it wants to make sure at all costs that every dime owed the club's student loan fund is collected, or with gilt edged security, before some of these fine Laredo young men die in action.

"Rotarian Allen's American-minded proposition is a simple one. He has offered to resign if a majority of the club believe his criticism of the club's policy of printing the names of students loaned money by the club to go to college but who have not made their payments on their loans since entering the service, is unjustified.

"Allen believes that while these young men are at the front the Rotary Club should not be worrying about such payments but should allow the young men to fight with a free mind. He also believes the widowed mothers of some of these young men should not be pressured for the money due to the Rotary Club by their gallant sons.

"As simple as the proposition is, three straight meetings have gone by and the membership has not been allowed to express itself in an American way by a rising vote on Allen's vote.

"The proposition has been lost in a maze of technicalities, official and unofficial meetings of the board, and dissertations of various types which do everything but submit the matter to an open, above-board vote before the club.

"Instead of allowing the membership to vote at the meeting yesterday, the board came up with another resolution which was read by the club secretary and mailed to Allen.

"Dodging, twisting, squirming, evading, hiding, substituting, the simple issue raised by Allen is still denied a vote before the club membership.

"In the meantime the widowed mother of one of the young men who owed the club money for his schooling and who went on to war, said in The Times office this week, she was being bothered by some of the Rotarians who seek to justify the club's policy of collecting the funds, regardless of the war.

"The rich, smug, socially elect group within the Rotary Club whom the 80,000 residents of Laredo and Nuevo Laredo for the most part only know by sight or by hearing, refuse to allow a vote on a matter brought up by one of its members.

"The club has earned around $3,000 on its loans to students and club's directors have passed a resolution praising the student loan committee and white-washing the charges made by the publisher.

"Certain members of the board have committed the whole board to an approval of kicking Allen out of the club but will not allow the entire membership the privilege of voting in the open on the issue.

"Allen has been a Rotarian since 1928 and in that period this is the second instance in which he has clashed with the small Hitler sympathizing element within the club. In July, 1941, five months before Pearl Harbor Allen sought to get the club to go on record wiring President Roosevelt that the Rotary Club would back the president to the limit if he should ask Congress to declare war on the axis.

"Hitler's friends within the club again showed their strength and put their Teutonic ties to such good use, the matter was shunted to star chamber proceedings, as in this instance, and Allen was asked to resign by the undercover workers who are

the real Edgar Bergen manipulating the entire membership as Charlie McCarthy's and very often relegating them to the stooge status of Mortimer Snerds.

"The fact that in 15 years only two arguments have been engaged in by Allen as a Rotary Club member and both of those were on the principle of Americanism versus Bundism were cited by the publisher's friends today.

"The Times each Thursday will bring its readers an account of the struggle between the American and Bundist elements within the Rotary Club until the principles of Old Glory prevail over those of the Swastika in that organization.

"Board members are Chairman John Ward, Matias de Llano, Charles Deutz, Kyle A. Ervin, W. B. Heaner, G. Cullee Mann, P. H. Stanford and Seb. Wilcox.

"Following is a letter and a resolution received by Allen Wednesday indicating that if his challenge for an open vote in the club is ever allowed, that he starts with nine votes against him:

" 'December 22, 1943.

" 'Mr. William Prescott Allen,
" 'Publisher, Laredo Times,
" 'Laredo, Texas.

" 'Dear Mr. Allen:

" 'At a Special Called Meeting of the Board of Directors of the Rotary Club of Laredo, held at the office of Mann & Mann, on December 21, 1943, at eight o'clock p. m., on motion duly seconded and carried, the Secretary was instructed to advise you as follows:

" ' "It was moved and seconded and carried, that Mr. William Prescott Allen be informed that the Board of Directors deeply resent and deplore his accusations as being false and unwarranted, and censure and condemn him for the manner in which he has presented such accusations; and further, that while they were unable to act on his resignation in the manner in which it has been submitted, that if he will submit an unconditional resignation to the Board, the same will be accepted." '

" 'I also enclose a copy of a motion which was unanimously adopted by the Board at this special called meeting.

" 'Yours sincerely,
" 'SEB. S. WILCOX
" 'Secretary.'

\* \* \* \* \* \*

"Copy of motion adopted by the Board of Directors of the Rotary Club of Laredo, Texas, at a Special Called Meeting held on December 21, 1943:

" 'It was moved, seconded and unanimously carried, that the Board of Directors at the next meeting of the Club make a report on its findings, after having very carefully gone over the entire records of the Student's Loan Fund Committee, and inform the membership that there is no basis whatsoever for criticism of the matter in which the Committee has handled the trust funds of the Club; furthermore, that the Board has found no evidence whatever of undue pressure having been exercised in the collection of notes; and, finally, that the Board congratulates the Student's Loan Fund Committee on the business-like, efficient and fair manner in which it has handled the trust funds of the Club; and that a copy of this resolution be mailed to Mr. William Prescott Allen, Publisher of The Laredo Times.' "

In addition to the foregoing statement, the indictment contains the following averments:

"The words 'Bundist, (meaning having the characteristics of members of the German American Bund) Hitler-minded (meaning having minds like that of Adolph Hitler, chancellor and dictator of the German Reich) influences within the organization;' the words 'the money-minded, percentage loving, collect-at-all-costs element;' the words 'this behind the scene Bundist minded group,' and the words 'the rich, smug socially elect group within the Rotary Club;' the words 'the small Hitler sympathizing element (meaning persons who sympathize with Adolph Hitler, chancellor and dictator of the German Reich) within the Club' and the words 'Hitler's friends within the Club' (meaning friends of the said Adolph Hitler) used in said statement, refer to the said John Ward, Matias de Llano, Charles Deutz, Kyle A. Ervin, W. B. Heaner, G. Cullee Mann, P. H. Stanford, and Seb. Wilcox who then and there were directors of the Rotary Club of Laredo.

"The words in said statement 'still dodging the issue of whether men in the armed forces should be hounded (meaning pursued relentlessly) for payments on their student loans, the Rotary Club board of directors again has denied the more than 40 rank and file members of the organization the simple, American privilege of voting on a sporting proposition to resign from the Club submitted by Publisher William Prescott Allen of the Laredo Times' convey the idea that the directors of the Rotary Club above named have pursued relentlessly members of the armed forces of the United States who borrowed money from

the Students Loan Fund, and that said directors sought to avoid a vote of the club on the propriety of their conduct.

"The words 'Still under the influence of Bundist, Hitler-minded influences within the organization, the 30 seconds necessary for a standing vote on whether Allen's resignation be accepted, has been denied for the third consecutive week. Apparently reading of the tremendous death tolls of American soldiers, sailors and marines at Tanarawa and in Italy, the money-minded, per-centage loving, collect-at-all-costs element from the former students or their parents, some of them widows, still has the whip hand.

" 'This behind the scene Bundist-minded group has the Rotary Club's financial interests so much at heart it wants to make sure at all costs that every dime owed the club's Student Loan Fund is collected, or with gilt edged security, before some of these fine Laredo young men die in action' convey the idea that the above named John Ward, Matias de Llano, Charles Deutz, Kyle A. Ervin, W. B. Heaner, G. Cullee Mann, P. H. Stanford and Seb Wilcox, directors of the Laredo Rotary Club, are indifferent to the sufferings and sacrifices of the men in the armed services of the United States fighting at the front and have used unconscionable methods to collect money from them.

"The words 'Hitler's friends within the club again showed their strength and put their Teutonic ties (meaning ties or connections with Germany and Germans) to such good use the matter was shunted to star chamber proceedings' (meaning secret, arbitrary and tyrannical proceedings) convey the idea that the above named directors of the Rotary Club of Laredo are friendly to Adolph Hitler, chancellor and dictator of the German Reich and have relations with enemy aliens.

"The words 'The Times each Thursday will bring its readers an account of the struggle between the American Bundist elements within the Rotary Club until the principles of Old Glory prevail over those of the swastika (meaning the emblem of the National Socialist Party of the German Reich commonly called the Nazi Party) in that organization' convey the idea that the aforesaid John Ward, Matias de Llano, Charles Deutz, Kyle A. Erwin, W. B. Heaner, G. Cullee Mann, P. H. Stanford, and Seb Wilcox are upholding and attempting to enforce the principles and methods of the Nazi Party of the German Reich and its leader Alolph Hitler.

"And said published statement conveys the idea that each of the persons to whom it refers, that is to say, the said John

Ward, Matias de Llano, Charles Deutz, Kyle A. Ervin, W. B. Heaner, G. Cullee Mann, P. H. Stanford, and Seb Wilcox has been guilty of acts which, though not penal offenses are disgraceful to them and each of them as members of society and the natural consequence of which is to bring them and each of them into contempt among honorable persons.

"Against the peace and dignity of the State."

To properely appraise the alleged libelous article it should be considered in its entirety, and not as cut up into sections or paragraphs. When so considered as a whole the reasonable construction appears to be that the article conveyed the idea that the Board of Directors named therein had been guilty of the "act" of "hounding," that is, "relentlessly pursuing" members of the armed forces of the United States who had not repaid to the Rotary Club funds which had been loaned to them as students. The words and phrases "Bundists," "Hitler-minded," "money-minded, percentage loving, collect at all cost element" and other like expressions are denunciatory and abusive, and when considered in connection with the article as a whole appears to attribute to the Board of Directors a state of mind which was the motive for the "act" charged against the directors.

Appellant sought to quash the indictment on the ground that language of denunciation alone would not support a libel charge under Sec. 2 of Art. 1275 P. C. McKie v. State, 37 Tex. Cr. R. 544, 40 S. W. 305; Nordhaus v. State, 40 S. W. 804; Pool v. State, 103 Tex. Cr. R. 90, 280 S. W. 214, support this position of appellant. He also attacked the indictment on the ground that the "act" attributed to the Directors of "hounding," that is, "relentlessly pursuing" members of the armed forces of the United States in an effort to collect what was owing by them to the Rotary Club, furnished no basis for a charge of libel because the act was sanctioned by the law. Reliance for this position is had upon an expression in the opinion in Terrence v. State, 137 Tex. Cr. R. 322, 128 S. W. (2d) 1211, as follows: "As long as a man acts in accordance with the law and his acts are sanctioned by law, it could hardly be disgraceful to him or bring him into disrepute."

It was never intended by the quoted language to convey the idea that as long as a person did not attribute to some one that the latter had been guilty of a penal offense they would be safe from prosecution for libel. If guilt of a penal offense was at-

tributed to some one the prosecution for libel would lie under another section than number two of Art. 1275 P. C. The language quoted is a general expression which was not necessary to a decision of the Terrence case, and if it is subject to the interpretation placed upon it by appellant and sought application here, it is entirely too broad, and would, in effect, render nugatory Sec. 2; of Art. 1275, P. C.

We conclude that under the circumstances existing at the time the article in question was published, and considering said article in its entirety as it appears in the indictment, the same does attribute to the Board of Directors a libelous "act" in "hounding" the members of the armed forces of the United States for repayment of money loaned them.

As the basis for a finding of guilt, the trial court gave the following instruction, viz:

"If you believe from the evidence beyond a reasonable doubt that the defendant William Prescott Allen on or about the date charged in the indictment, in the County of Webb and State of Texas, did, with intent to injure, make, write, print, publish, sell or circulate the statement set forth in the indictment and that said statement was malicious and affected the reputation of John Ward, Matias de Llano, Charles Deutz, Kyle A. Ervin, W. B. Heaner, G Cullee Mann, P. H. Stanford, and Seb Wilcox, and conveyed the idea that they had been guilty of acts or omissions which, though not a penal offense, were disgraceful to them as members of society and the natural consequence of which was to bring them into contempt among honorable persons, then you will find the defendant guilty of libel as charged in the indictment and assess his punishment at a fine of not less than one hundred dollars nor more than two thousand dollars or by imprisonment in the county jail for a length of time not exceeding two years."

Appellant's attorneys evidently realized that under the foregoing instruction the jury was left at liberty to base a finding of guilt upon any statement in the article published which the jury might believe charged an "act or omission" which the jury thought was libelous.

Appellant presented an objection to the instructions in the following language:

"The defendant objects to the said charge of the court be-

cause the same is too general, and nowhere limits the jury to a consideration only of the acts or omissions charged in the indictment with respect to the article set up in the publication, on which the indictment purports to be based."

In addition to the foregoing objection appellant requested a special charge which was refused. Said special charge in substance was that the only act alleged in the indictment charged that the published article conveyed the idea that the Board of Directors—naming them—pursued relentlessly members of the armed forces of the United States who had borrowed money from the Student's Loan Fund of the Rotary Club, and that the jury in reaching a verdict should not consider any other act or omission contained in said article, and that unless the jury believed from the evidence beyond a reasonable doubt that said article did charge that said directors did pursue relentlessly members of such armed forces, and that such act was disgraceful to such directors as members of society, and that such act of relentless pursuit had the natural consequences of bringing such directors into contempt among honorable men, and that said article was published maliciously and with intent to injure said directors, you will acquit appellant. Thus it will be seen that appellant specifically called the court's attention to the contention that the question of appellant's guilt should be restricted to the only part of the article in question which charged a libelous "act," viz: the act of the Board of Directors in "hounding" members of the armed forces in the collection of funds due the Student's Loan Fund.

We are of opinion that the complaint of appellant that the case was submitted too generally is meritorious and that the consideration of the jury should have been limited to the act referred to. See Potter v. State, 99 Tex. Cr. R. 47, 267 S. W. 486, and cases therein cited. While some of the cases relate to indictments, the principle seems clearly expressed.

Opinions involving alleged libelous articles are unavoidable long as it is usually necessary to set the article out to make the opinion intelligible. Therefore, we pertermit any general observations or discussion of the evidence, but same is deemed sufficient to support the conviction.

Other questions presented in bills of exception have been considered. None is thought to present error calling for reversal.

From what has been said it follows that we are not in accord with appellant's contention that the judgment should be reversed and the prosecution dismissed, nor with the State's contention that the judgment should be affirmed.

Because of the error pointed out in the too general submission of the case to the jury the judgment will be reversed and the cause remanded, and it is so ordered.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Both the State and appellant have evidenced their dissatisfaction with the original opinion herein, and have filed motions for a rehearing, appellant contending that the indictment · is defective in that the same charges no libelous matter, and that this cause should be dismissed; the State contending that this cause was properly submitted to the jury; that the court correctly submitted the whole instrument declared upon, leaving to the jury to determine whether or not the charged acts and omissions were of such a character that would cause the persons mentioned therein to be brought into contempt among honorable persons, etc.

While the published article as a whole was pleaded, and admissible in order that the so-called libelous matter could be fully understood, we do think that not all the published article is libelous, nor that each and every paragraph thereof could be said to impute to such directors an act which was disgraceful to them as a member of society, and the natural consequence of which was to bring them into contempt among honorable persons. We think the court should have, in some way, directed the attention of the jury to the main point and act charged in the publication, which was the efforts made to collect certain owed moneys from men in the armed forces. It was held in the case of Squires v. State, 39 Tex. Cr. R. 96, on page 108:

"The court, in the general charge, only instructed the jury with reference to the allegation of the information predicated on the proposition that appellant attributed an act of dishonesty to the prosecutor, who was a candidate for office, that rendered him unworthy of holding said office. As we have seen, the information is not libelous as to this charge, but was only libelous on the proposition that it attributed to the prosecutor Walker an act disgraceful to him as a member of society, and the natural

consequence of which was to bring him into contempt among honorable persons. This latter phase of the case was not given to the jury at all. Appellant's special charges, while not correct, called the court's attention to this matter, as charges were presented embracing both views. Evidently, the jury responded to the charge of the court, and found their verdict upon a charge not authorized by law, as we have held same was not libelous. The court should have instructed them to ignore or disregard that portion of the information, and should have simply instructed them on the other proposition, substantially to the effect that if they believed appellant made or published said circular under the circumstances stated in the information, and if they believed that, under such circumstances, the making or publication of said secret circular letter by defendant was of and concerning the prosecutor, and attributed to him an act disgraceful as a member of society, and the natural consequence of which was to bring him into contempt among honorable persons, they should find him guilty, and assess his punishment at a fine, etc."

That the court should have instructed the jury on the fact to be proven herein, that is, as to the acts of such directors relative to the collection of these accounts then due, we think is borne out by the following excerpt from McArthur v. State, 41 Tex. Cr. R. 635, 57 S. W. 847, as follows:

"It is complained by appellant that the court erred in instructing the jury at all in the case, because the jury are constituted, under our statute, judges of the law. The court merely instructed the jury in accordance with the provisions of article 748, Penal Code. We do not understand this article of our Code to contravene the provisions of our Constitution on this subject (see Bill of Rights, section 8), but it is in consonance therewith. This provision makes the jurors simply the judges of the law under the direction of the court, as in other cases. In other cases the jury take the law from the court, and are required to be governed thereby; and we understand the Constitution and the statute to mean the same thing, and it was never intended that the jury, with reference to libel, should construe the law for themselves and without direction from the court."

It is contended by appellant that it is not libelous to attempt to collect a justly due obligation; that the indictment itself evidences that the directors were criticised in such publication only for making such an attempt. We cannot wholeheartedly agree to the doctrine that one attempting to do a legal licensed act cannot be libeled for making such an attempt. It should be seen,

so we think, that a published article might criticise the manner of, or impute to, such endeavor many acts that would draw upon the actor the contempt, of honorable persons, although the original act itself was sanctioned by law. We think the original opinion was correct in its comment on the case of Terrence v. State, supra.

This cause has given us some concern, and the record has been carefully gone over by all members of the court, and we think the sounder doctrine lies with our views expressed in the original opinion by the Presiding Judge, and while all matters may not be free from doubt, we think that in such opinion we find the better reasoning.

Therefore both motions will be overruled.