CASE 44—PETITION ORDINARY—NOVEMBER 23.

# Mudd v. Rogers.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. SLANDER AND LIBEL.—Words charging the plaintiff with being "a drummer for a whore house" are not actionable *per se;* in their common acceptation they can not be said to mean that he was engaged in the business of inducing virtuous women to go into whore houses and enter upon a life of shame, and was therefore guilty of a felony.·

2. SPECIAL DAMAGES.—But inasmuch as they imputed an infamous occupation, the plaintiff may show by special averments special damages, and his allegation that by reason of their utterance and publication he had been socially ostracised presented a good cause of action.

JO. HAYCRAFT AND WILFRED CARRICO FOR APPELLANT.

1. All who participate in misdemeanors are principals, and therefore, if appellant was a "whore house drummer" he was punishable as a whore house keeper, and an indictable offense was charged against him. Bishop's Crim. Law, 2d ed. vol. 1. sec. 483; Ross v. Com., 2 B. M., 417.

2. But if the plaintiff sustains actual damage, whether the words were actionable *per se* or not, he may maintain his action. Newman's Pleading and Practice, page 319; Chitty's Pleading, pp. 641 and 643; McGee v. Wilson, Littell's Select Cases, 188.

SWEENEY, ELLIS & SWEENEY FOR APPELLEE.

1. The words alleged in the original and amended petitions are not actionable *per se.* Leman v. Wells, 87 Ky., 118; Newell on Libel and Slander, p. 103, and authorities there cited.

2. The amended petitions do not show a proper case for special dam-

ages.  To authorize the recovery of special damages the plead-
ings must contain all the allegations and averments necessary
to enable a party to recovery on a breach of contract.  Newell
on Libel and Slander, pp. 849, 851, 855, 856; Townshend on Libel
and Slander, sec. 345; Duncan v. Brown, 15 B. M., 192; Hume
v. Arrasmith, 1. Bibb, 166; Logan v. Steel, 1 Bibb, 593; Jones
v. McDowell, 4 Bibb, 189; Barr v. Gans, 3 Dana, 258; McNamara
v. Shannon, 8 Bush, 558.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

The court below sustained a demurrer to the petition in
this action, with leave to amend; but the court refused to al-
low the first and second amended petitions offered by plain-
tiff to be filed, and dismissed plaintiff's action, to reverse
which judgment this appeal is prosecuted.  The material
portion of the petition reads as follows:

"The plaintiff, James D. Mudd, says he is a single man,
having never married, is a resident of and business man in
the State of Kentucky, and has been for many years, and
has an extensive acquaintance, both business and social, in
Daveiss county, Ky.  He says he has always stood high so-
cially and as a business man in said county and State, and
especially in Louisville, Ky., enjoys the confidence of all the
good citizens thereof for correct business dealings and proper
social demeanors, until very recently, to-wit, on the — day
of August, 1895, plaintiff can not say, because he does not
know the precise day, the defendant, William Rogers, did
maliciously, wrongfully, unlawfully, falsely and slanderous-
ly utter and publish, publicly and privately, and in the pres-
ence and hearing of Joe Price and William Winfried, and
many other good citizens of said county and State unknown
to plaintiff, with intent to injure and destroy his good

name and reputation and character, and which did
injure and destroy his said good name and reputa-
tion and character among the citizens aforesaid,
the following words, to-wit: He, meaning plaintiff,
James D. Mudd, 'is a drummer for a whore house,' thereby
conveying the idea that plaintiff made a living by and his
business was to solicit whore-house customers and procure
men and women to commit fornication and adultery, and
inveigle young women into lives of shame and ruin.

"The above language was used, uttered and published by
defendant for and with the intent aforesaid, and is false,
malicious and slanderous, and injured and destroyed the good
name and character of plaintiff amongst all the good citi-
zens of said county and State and country; so that plaintiff
is now, because of said slanderous words, avoided and
shunned by all good citizens, both male and female, his for-
mer associates, by whom he was always, before said slander,
honored and respected, all to the damage to plaintiff in the
sum of $10,000, for which sum plaintiff prays judgment
against defendant, and judgment for his costs herein expend-
ed, and for all proper relief."

The first amended petition is as follows: "That the defend-
ant in using, uttering and publishing the slanderous words
complained of in his original petition, viz.: 'He is a drum-
mer for a whore house,' intended to and did convey the mean-
ing and idea that plaintiff was a drummer and solicitor for a
whore house; that whore house meant and was a bawdy
house, or place where men and women meet together for and
did there commit acts of fornication and adultery; that this
is the true and universally accepted meaning of the term

'whore house,' and was so understood by those who heard defendant use said language, and it was understood by and intended by defendant that those who heard him should so understand him. Defendant intended that those who heard him should understand him, and that they did understand him that plaintiff's business was to solicit and procure men and women to meet at such whore or bawdy house and there commit acts of fornication and adultery, and that plaintiff's avocation and business was to aid and entice unmarried girls under the age of twenty-one years of age to enter such whore or bawdy-house, that they might there be seduced and lose their virtue, and this was the true meaning of the slanderous language used by the defendant as aforesaid.

"Plaintiff says that prior to the uttering and publishing of said slanderous language aforesaid he, plaintiff, had a large number of acquaintances and friends and associates in Daveiss county and other parts of the State of Kentucky, and that the publishing of said slander has lost him many of said friends, has lost him their respect and esteem, and has rendered him odious in the community, and he has other-wise suffered in his reputation and good name, as stated in his original petition. Wherefore, the premises considered, he prays as in his original petition, and he says the foregoing statements are true."

Plaintiff then offered his second amended petition, which is as follows: "The plaintiff further amends his petition and says that at the time and place mentioned in the petition of the speaking and publishing of the slanderous words named in the petition, the defendant further said, spoke and published of and concerning this plaintiff the following

Mudd v. Rogers.

words, to-wit., 'He is a drummer for a whore house in the city of Louisville, Ky.,' and by said language the defendant meant to and did accuse the plaintiff of aiding and assisting in the keeping of a whore house or bawdy house in the State of Kentucky, and that it was the business of plaintiff to solicit and procure, for given compensation and reward, men and women to meet at such whore or bawdy house and there commit acts of adultery and fornication, and that the avoca tion of plaintiff and the business of plaintiff was, and that plaintiff was engaged in the business and avocation of aiding and enticing unmarried girls under the age of twenty-one years to enter such bawdy house, that they might there be seduced and lose their virtue, and this was the true meaning of the slanderous language used by the defendant as afore- said, and defendant intended to convey this idea to those who heard him, and those who heard said slanderous language did so understand defendant.

"Plaintiff says the language so used by defendant was false, malicious, unlawful and slanderous, and was so used and published by defendant with the intent to injure and destroy plaintiff's good name and reputation and character, and it did injure and destroy his good name, reputation and character among his many friends and acquaintances. He says that on the evening on which said slanderous lan- guage was spoken of and concerning him, he, the plaintiff, had gone with a young lady, to-wit., Miss V. Winstead, to a party or social gathering, and it was at said party that said language was used by the defendant, and that by the reason of the use and publication of said slanderous language the said lady refused to permit him, plaintiff, to accompany her

home, and refused and still refuses to associate with plain-
tiff; and that by reason of the speaking and publication of
said slander plaintiff was deprived of the pleasure and
amusement of said social gathering, and that the young
ladies there refused to permit him to dance with them on
account thereof, and that by reason of said slander. he has
lost the society of, and the pleasure of, associating with the
aforesaid Miss Winstead, and nearly all the other young
ladies and citizens in that community.   Wherefore, plain-
tiff's feelings were greatly injured, and subjected to great
shame, mortification, and lost his reputation as aforesaid,
and he was thereby brought into universal 'execration.'
Wherefore, the premises considered he prays as in his peti-
tion."

The contention of appellee is that the words charged to
have been spoken by the appellee are not actionable, *per se*,
and also that the meaning or import of the words as claimed
by the appellant is not the fair and reasonable meaning of
the words charged to have been spoken.

The contention of appellant is that the words charged an
indictable offense, and also imputed moral turpitude, hence
were actionable *per se;* but if that be not true, the intent of
defendant and the reasonable meaning conveyed by the slan-
derous words were as set forth in the amended petitions
offered to be filed, and that he sustained special damages as
set out in the amended petitions offered to be filed.

If the slanderous words charged in their common accepta-
tion mean that appellant was engaged in the business of in-
ducing virtuous women to enter into whore houses, and enter
upon a life of shame, then the charge would import a felony,

and would be actionable. If the words spoken necessarily imply the charge that defendant was engaged in the business of promoting a whore house, and thereby inducing persons to commit the crime of fornication or adultery, he would be guilty of an indictable offense, and, therefore, the words charged to have been spoken would be slanderous *per se.*

We are not inclined, however, to hold that the terms used necessarily imply, or in effect charge, the appellant with the acts or offense aforesaid. We can not say as a matter of law that the term "drummer for a whore house" is equivalent to charging that appellant was guilty of the indictable offense heretofore mentioned; but it is perfectly manifest that the charge imputed improper conduct or a disreputable avocation, hence the charge might, and reasonably would, work special injury to plaintiff. There can be no question but what the charge, if true, would greatly tend to degrade the appellant, and justly debar him from the society of pure ladies and gentlemen, and thus inflict upon him the damages of shame and mortification alleged by him in the amended petitions which he offered and which were improperly rejected.

It is a well-settled rule of law that words are to be construed, as a general rule, according to the general usage and acceptation accorded or given to them by the public at large among whom they are used, hence it is that we can not say as a matter of law that the slanderous words charged to have been uttered at the time and place of such utterance were actionable *per se;* but inasmuch as it is certain that they imported an infamous occupation, it was competent for appellant to show by special averments special damage result-

ing to him from the utterance and publication of the alleged slander.

In Lemons v. Wells, 78 Ky., 118, this court, in discussing the question of slander, said: "At common law actionable words *per se* were such as imported a felony, but many public offenses were felonies at common law which are mere misdemeanors by more enlightened American statutory law. The general rule is that any words which charge a person with an indictable offense, which is punishable by an infamous or corporal punishment, or which involves moral turpitude, are actionable in themselves. (Brooks v. Coffin, 5 John., 190; Bissell v. Cornell, 24 Wend., 354; Cooley on Torts, 196.)"

If the appellant was engaged in the business of inducing persons to attend whore houses and there commit fornication or adultery, he was guilty of an indictable offense (Bishop on Criminal Law, section 483, volume 1). If the words were not actionable *per se*, yet plaintiff was entitled to recover, if they were false, by alleging and showing special damages. (Newman's Pleading and Practice, 319, and cases cited.)

The damages or injury resulting to plaintiff from the publication of the slander, if his allegations be true, can scarcely be computed in dollars and cents. The treatment that he received from his theretofore friends and associates, and especially the ladies, to a sensitive and high-toned gentleman, would be immeasurable; and if the charges were false, and their utterance and publication brought upon the appellant the disgrace and ostracism which he alleges, he is certainly entitled to maintain this action, and to recover damages to some extent commensurate with the injuries inflicted.

For the reasons indicated the judgment of the court below is reversed and the cause remanded, with directions to permit the two amended petitions to be filed and for further proceedings consistent with this opinion.