### Taylor v. Moseley.

(Decided June 6, 1916.)

#### Appeal from Daviess Circuit Court.

1. **Appeal and Error—Judgment Will Not be Reversed for Minor Error.**—A judgment will not be reversed for a minor error in the admission or exclusion of testimony which did not prejudice the substantial rights of the appellant.

2. **Libel and Slander—Special Damages.**—Where the language constituting the alleged libel is not actionable per se, the plaintiff can recover only upon showing special damages.

3. Libel and Slander—Special Damages.—Where the language of an alleged libel is not actionable per se, the plaintiff cannot recover unless the proof shows that the special damages alleged are the natural, immediate, and legal consequences of the charge, and due exclusively to the publication by defendant.

4. Libel and Slander—Special Damages.—In an action for libel for language used concerning a candidate for office, which is not libelous per se, the failure of election by the plaintiff and the value of the office are too remote and speculative to authorize a finding of special damages.

W. T. ELLIS, L. P. TANNER, LITTLE & SLACK and AUD & HIGDON for appellant.

C. M. FINN, LE VEGA CLEMENTS and W. P. SANDIDGE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.— Affirming.

E. P. Taylor and Jamie Weir were rival candidates for the Democratic nomination for clerk of the Daviess county court in the primary election held on August 2nd, 1913. Taylor was then serving his second term as county court clerk, and formerly had held the office of judge of the county court.

The contest between Taylor and Weir was spirited, and resulted in Weir obtaining a majority of 43 out of a total vote of 5307.

For several weeks before the election it had been rumored that Taylor had made certain remarks in 1911 in criticism of the Catholic voters of the county. At a public speaking at West Louisville in Daviess county, on July 21st, 1913, Taylor, who was the principal speaker, denounced as slanderous the remarks which had been attributed to him.

In answer to Taylor's speech, Mullican, a candidate for the legislature, interrupted Taylor and stated that he had in his possession the affidavit of C. J. Moseley, the man to whom it was claimed Taylor had made the statements attributed to him. Taylor, however, declined to be interrupted or to let Mullican read the affidavit, and nothing further was said about it on that occasion.

However, on August 1st, 1913, the day before the primary election, C. J. Moseley made the following affidavit:

"I, C. J. Moseley, state that about two years ago, in the race for the legislature in Daviess county between J. H. Elder and R. M. Stuart, Judge E. P. Taylor called me by telephone and asked me to come to his office. When I went he wanted to know why I was against Robert Stuart and wanted me to be for him. I told him I had nothing against Mr. Stuart, but I was for Mr. Elder because I thought it best for the Democratic party to nominate him. I called Judge Taylor's attention to the fact that both he and Stuart were related to Governor McCreary's family, and that Mr. Ben Johnson had withdrawn from the race for Governor against McCreary, charging that McCreary was using the fact that he (Johnson) was a Catholic against him in the race. I told Judge Taylor that in view of this fact I did not think we ought to turn Mr. Elder down, although I did not then know Mr. Elder. I told him if we did it might be some ground for the Catholics to get mad and refuse to vote the Democratic ticket; and, I further said to him that in view of the fact that both he and Stuart claimed to be kin to Governor McCreary's family that I did not think he ought to be running Stuart, and that his activity for Stuart might make against him hereafter. He said he did not know that he would ever run again, and that he had been pandering to the Catholics any way as long as he was going to. He further said that if he did run again, however, he could give the priests ten dollars for their picnics and they would see to it that he got all the votes.

"While I was at West Louisville on the night of the 21st I heard Judge Taylor criticising Mr. Sim Mullican for circulating the report that he had made statements as above, and I make this affidavit in justice to Mr. Mullican, for I was the one, or one of the ones, for I understand that the same statements were made by Judge Taylor to others, who gave Mr. Mullican his information.

"C. J. Moseley.

"Subscribed and sworn to before me by C. J. Moseley this the 1st day of August, 1913.

"Ernest Weill,

"Notary Public Daviess Co., Ky."

Moseley's affidavit was not printed in the papers, but two copies of it were made, and one copy was given to

Hazel who, on his own motion, showed it to certain voters on the day of the election.

In the local morning papers of August 2, 1913, Taylor published the following counter affidavit:

"State of Kentucky,

"Daviess County, Sct.

"The undersigned affiant, E. P. Taylor, states that fortunately he has discovered at this late date, namely 7:30 p. m., August 1, 1913, that there is being circulated affidavits dated August 1st, 1913, and signed by C. J. Moseley, attacking his loyalty and honesty of purpose to the people of his county; that the affidavit so signed by C. J. Moseley is malicious and a falsehood; is a lie, born of prejudice and malice, and is being circulated by C. J. Moseley at the eleventh hour in his race for county clerk to injure this affiant and with the hope and view in said C. J. Moseley's mind that said affidavit will get in its work against this affiant too late for this affiant to get to the people with the truth.

"I, E. P. Taylor, further state and believe the fact to be true that the affidavit signed by C. J. Moseley was prepared by crafty politicians with the designing and malicious purpose of defeating affiant for the office of county clerk.

"E. P. Taylor.

."Subscribed and sworn to before me by E. P. Taylor this the 1st day of August; 1913, 8:30 p. m.

"Tandy L. Harl, Clerk Daviess Circuit Court."

To this publication a rejoinder by Moseley was made in the papers, which contained this statement:

"But since Judge Taylor in his speech at West Louisville denied any recollection of having a pistol at a recent meeting of the fiscal court, and of the fact that Sheriff Winsted disarmed him on this occasion, I am not surprised that he should deny the truth of the facts in my affidavit. These facts, however, can be proven, and will be, if he desires, by others and myself."

On July 27th, 1914, Taylor filed this suit for libel against Moseley, claiming damages in the sum of $25,000.00. Moseley justified by alleging the truth of the statements contained in his affidavit; and, upon a trial of the issues thus made, the jury returned a verdict for the defendant. Taylor appeals.

Appellant insists that the trial court erred: (1) in admitting incompetent evidence offered by appellee, and in excluding competent evidence offered by the appellant; (2) in striking out that part of the petition which alleged special damages based upon the loss of the office; and, (3) in failing to give certain instructions offered by the appellant.

We will consider these questions in the order named.

1. Moseley stated that he made the affidavit for the protection of Mr. Mullican, the candidate for the legislature, who seems to have made the statement denounced by Taylor. On his direct examination Moseley testified as follows, in this connection: "Q. Did you hear him (Taylor) go all over the county abusing Mr. Mullican? A. I have heard of it." Plaintiff objected to this question and moved the court to exclude the answer from the jury, but the court overruled the objection. Appellant insists that Moseley should not have been permitted to tell what he had heard upon that subject.

In view, however, of other proof appearing throughout the record that Taylor and his friends had denounced Mullican, the error, if it be so considered, was of minor importance. Certainly, it did not affect the appellant's case.

Upon the cross-examination of Moseley, the plaintiff put into the record the rejoinder card of Moseley in which he had referred to the pistol incident in the fiscal court, and then asked Moseley this question: "You do not have any knowledge at all on the subject of what took place in the county court room?" The court of its own motion excluded the question, and the plaintiff now complains that in doing so it committed a reversible error.

We see no error here. The plaintiff having first brought this matter into the record on cross-examination is in no position to complain that he was not permitted to further pursue it. This testimony was irrelevant and the trial court properly took the view that it had nothing to do with this case.

It is next insisted that the court erred in refusing to permit Taylor to show what the fees of the office of county court clerk were reasonably worth per annum to the clerk; and he avowed that if permitted to answer the question the witness would state that the fees of the office were worth $5,000.00 a year, clear of expenses.

This objection raised the question whether the plaintiff was entitled to show special damages, and will be considered under the next paragraph of this opinion.

Finally, Hazel, who procured Moseley to make the affidavit, was asked as to the extent of the circulation of the two copies of the affidavit which he had made, but the court sustained an objection by the defendant and declined to let him answer the question. But later in his testimony Hazel in an answer to a similar question by plaintiff's counsel, said: "I went to Knottsville, and I can tell you what I did with these copies. I gave one to Mr. Aull who was to be his deputy, and took the other and showed it to my brother-in-law, who is a Catholic priest."

In this connection, it is further insisted that when Hazel was asked if there were not a very large number of the Democratic voters of the Knottsville precinct who were members of the Roman Catholic church, the court refused to allow him to answer the question. In this, however, counsel for appellant is mistaken, since the record upon this subject shows that Hazel testified as follows in answer to questions by appellant's counsel:

"Q. Knottsville is a precinct in Daviess county in which there is a very large number of Democrats who are members of the Roman Catholic church, is not that true?

"The defendant objected to this question and the court being advised overruled said objection to which ruling the defendant excepted.

"A. Yes, sir. Q. That is your old home precinct, you had formerly lived there a great number of years? A. I was born and raised there. Q. How far is that from Owensboro? A. Thirteen miles. Q. Was Guy Aull a Catholic too? A. Yes, sir. Q. Did you deliver one to Felix Heady? The defendant objected to this question and the court being advised overruled said objection, to which ruling the defendant excepted. A. I hardly think I did. I do not remember. I do not think I had but two made and I never did give up the original until I was called in court about it."

From this review of the rulings of the court upon the evidence, we feel sure appellant was in no way prejudiced.

2. Upon motion of the defendant, the court struck from the petition all that part of it which recited that Taylor was clerk of the Daviess county court and a can-

didate for re-election, with good prospects of re-nomination and election; that the affidavit was made for the malicious purpose of injuring plaintiff in his canvass and to bring him into contempt and disrepute with those Democratic voters who were members of the Catholic church, and into dishonor and disrepute with the public generally; that there were fifteen hundred legal Democratic voters in the county that belonged to the Catholic church; that the fees of said office were reasonably worth $5,000.00 each year; and, that he would have received a majority of all the Democratic votes cast in said primary and the nomination to the office for which he was a candidate, for a term of four years, but for said libelous publication complained of.

By this ruling it is contended the court erroneously held that plaintiff could not recover special damages in this action. The language of the affidavit which is the basis of the action is not actionable *per se.* Williams v. Riddle, 145 Ky. 459, 36 L. R. A. (N. S.) 974; Pollard v. Lyon, 91 U. S. 225. In such a case plaintiff can recover only upon a showing of special damages. And, the language of the alleged libel not being actionable *per se,* the plaintiff cannot recover, unless the proof shows that the special damages alleged are the natural, immediate, and legal consequence of the charge, and due exclusively to the publication by defendant. 25 Cyc. 525; Axton-Fisher Tobacco Co. v. Evening Post Co., 169 Ky. 64.

In Williams v. Riddle, *supra,* we said:

"To sustain a recovery plaintiff must not only show damages, but the damage must be the natural and probable consequence of the words used. Lynch v. Knight, 9 H. L. Cas. 591; 8 Eng. Rul. Cas. 387. The damage here alleged is too remote, uncertain and speculative, to claim the attention of a court. Field v. Colson, 93 Ky. 348."

See also The Windish-Mulhauser Brewing Co. v. Bacon, 21 Ky. L. R. 928, 53 S. W. 520.

As to what character of loss will be sufficient to show special damages for which a recovery may be had, 25 Cyc. 525, says:

"The special damages must flow from impaired reputation. It must be a loss of a pecuniary character, or the loss of some substantial or material advantage.

Thus loss of fuel and clothing previously gratuitously furnished, the refusal of civil entertainment at a public house, loss of a marriage, loss of substantial hospitality of friends or third persons, loss of a customer, or a general falling off in business, a refusal of credit, or loss of profitable employment is sufficient evidence of special damages. But evidence of the loss of *consortium vicinorum,* or evidence that plaintiff's relatives slighted and shunned him, is not sufficient to show special damages. Neither mental suffering nor physical sickness will alone be sufficient to show special damages to support an action for words not actionable *per se.*"

We have been cited to no case in which it has been held that failure of election to an office could be shown to authorize a finding of special damages. The loss of the office cannot be said to be the natural, immediate, and legal consequence of the charge and due exclusively to it.

Appellant quotes from section 247 of Townsend on Slander and Libel in which that author, with due deference to the decisions, says that the rule must be the same for every kind of employment, and office is another name for employment, and that the right which one has to speak concerning a candidate for employment as a mechanic or domestic is neither more extensive nor more limited than the right one has to speak of a candidate for the office of legislator.

The author, however, conceded that his opinion thus expressed, is at variance with the weight of authority. We think the trial court was right in holding that special damages for the loss of the office had no proper place in this case, for the reason that the damages specially alleged were too remote and speculative to justify serious consideration.

In Field v. Colson, 93 Ky. 348, Field had been a candidate for the legislature against Howard and withdrew from the contest. Later, he re-entered the race, and the defendant, Colson, charged him with having accepted a bribe to abandon the contest against Howard. Field was defeated and sued Colson for slander.

In affirming a judgment for the defendant, the court said:

"The plaintiff had no cause of action. The words charged did not, if true, constitute an indictable offense, nor were they spoken of him in the way of his office,

profession or trade, unless his candidacy can be so re-
garded; and even if actionable by averring special dam-
ages, the damage alleged is too remote, uncertain and
speculative.''

When we remember that the affidavit which is the
foundation of this action was not published in a news-
paper, and that the counter-affidavit of Taylor was pub-
lished in the newspapers, how can it be said that plain-
tiff lost the office by reason of the Moseley affidavit and
its circulation limited to two copies? Special damages
to be recoverable must have some direct and immediate
connection with the charge; they must be the direct re-
sult of the action complained of.

The trial court properly held, as a matter of law,
that special damages were not recoverable for the loss
of the office; and, that being true, that portion of the
petition which sought to show special damages by alleg-
ing the value of the office of county court clerk, was
properly stricken out.

3. The complaint is made, not that instructions 1,
2 and 3 given by the court are erroneous, but that sim-
ilar instructions offered by the appellant more clearly
stated the law on that subject. If appellant's conten-
tion in this respect was sound, it would not be a reversi-
ble error because, as he concedes, the first three instruc-
tions correctly stated the law upon the subject of which
they treated. The fourth instruction properly defined
actual malice, and the fifth instruction prohibited a re-
covery based upon the result of the primary election.
Plaintiff insists that the court should have given instruc-
tions 5 and 7 offered by him, and that the failure to give
them constituted reversible errors. The fifth instruction so
offered, advised the jury that it was not necessary for
the plaintiff to prove any specific damage in order to
recover, and that the law presumed the reputation of
the plaintiff to be good in the community; while, by the
seventh instruction tendered, the appellant asked the
court to instruct the jury that if they found any of the
injurious statements contained in the alleged libel false,
they should find for the plaintiff; and, that malice was
properly inferrable from the falsity of the words
''charged in the complaint as libelous,'' the principal
question being as to the truth of the matter contained in
the alleged libel.

These questions, however, were submitted by the first three instructions. The first instruction peremptorily directed a finding for the plaintiff unless the jury should believe from the evidence that the charges contained in the publication complained of were in fact or in substance found to be true as published. The second instruction was the converse of the first, and directed a verdict for the defendant in case the jury should believe from all the evidence that the whole publication complained of was proven in terms, or in substance, to have been true. The third instruction gave the proper measure of damages and authorized a recovery of punitive damages in case the publication was induced by actual malice upon the part of Moseley, or by a reckless disregard of plaintiff's rights. But the jury having found for the defendant upon his plea of justification, the instruction upon the measure of damages becomes unimportant.

The language used being not libelous *per se,* and the special damages avowed being too remote and speculative to authorize a recovery, the plaintiff had no case. Field v. Colson, *supra.*

From a careful reading of the entire record, we fail to find that appellant has been prejudiced in any of his substantial rights.

Judgment affirmed.