## Shields v. Booles et al.

(Decided May 5, 1931.)

674

WOODWARD, HAMILTON, HOBSON and OLDHAM CLARKE and E. H. GAITHER for appellant.

GARNETT & VAN WINKLE and C. E. RANKIN for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

B. F. Shields and W. W. Booles, both of Spencer county, were rival candidates in the primary election of August 3, 1929, for the Democratic nomination for State Senator in the Twentieth Senatorial District, composed of the counties of Spencer, Anderson, Franklin, and Mercer. Booles was awarded the certificate of nomination, and it does not appear that any contest of the nomination

was filed. Immediately following the primary election, Shields sued Booles and his campaign chairman, Hanley Bohon, to recover damages in the sum of $25,000.

The defendant Hanley Bohon filed motions to paragraph the petition, and to strike therefrom several averments specified in the motion. The defendant W. W. Booles filed similar motions, together with a motion to elect between the two causes of action for slander and libel set up in the petition, and also a general demurrer to the petition as amended. The circuit court sustained the motion to strike, and the general demurrer, which ruling resulted, when the plaintiff declined to plead further, in a dismissal of the action. This appeal is prosecuted to review and reverse the ruling of the circuit court.

Since the ultimate decision was upon demurrer to the petition, it is necessary to indicate the scope and character of that pleading. It sets forth the adversary relations of the parties in seeking the senatorial nomination, the eligibility and qualifications of both candidates for the office, due compliance with the law by each candidate so as to have his name printed on the official ballot, and other formal allegations.

It is then charged that the two defendants together with other persons unknown to the plaintiff, entered into a conspiracy to procure large sums of money to be used in circulating false, malicious, and scandalous statements concerning plaintiff in order to bring about his defeat and to accomplish the nomination of Booles; that as a result of the conspiracy money was procured in large sums from the race-track gambling interests in Kentucky, and with that money the defendants, and their associates, personally interviewed various and sundry persons in the four counties comprising the district; that voters who opposed legalized race-track gambling were told that plaintiff, while a member of the House of Representatives of this state in 1920, had voted against a repeal of the pari-mutuel law, and in favor of race-track gambling; that such statement was false and was made maliciously and with knowledge of its falsity; that W. W. Booles had served in the State Senate for eight years and had never voted in favor of the race-track gambling, pari-mutuel law, which was a false statement designed

to alienate supporters of plaintiff and to affiliate them with Booles; that defendants published conspicuously on the front page of a Harrodsburg newspaper of wide circulation a written statement concerning plaintiff that:

"The Shields Committee has seen cause to attempt to inject the mutuel issues in this campaign.

"Mr. Booles served for eight years in the Kentucky Senate and in all this time, he never cast a vote in favor of the pari-mutuels law.

"His opponent, Dr. Shields, served in the Legislature from Spencer County in the 1920 session. The pari-mutuel law did come before Dr. Shields in the 1920 Legislature in Senate Bill No 66, which was a bill to repeal the pari-mutuel law and Dr. Shields voted against repeal of the present racing law and in favor of legalized gambling."

That the statements were false and deceptive and misrepresented the public records of both candidates; that the statements were calculated and contrived to deceive voters and to induce them to vote against the plaintiff and for the defendant; that many voters were thus and thereby caused to vote for Booles and against plaintiff; that various individuals in various precincts were appointed and selected to circulate orally the false and malicious statements already indicated; and that all of the wrongful acts resulted to the great harm and detriment of the plaintiff, and to the advantage of defendant. It was further alleged that many voters in each and every one of the counties of the district were bribed to vote for Booles and against the plaintiff, all to his great damage and harm; that plaintiff was an active and intense opponent of race-track gambling in Kentucky and publicly proclaimed his position in favor of repealing the pari-mutuel law; that Booles made no public declaration for or against repeal, but did cause the position of plaintiff to be misrepresented, which resulted in plaintiff being deprived of the Democratic nomination for Senator. The allegation respecting damage is "that by reason of the false and malicious statements of the defendants and each of them and their associates he has been damaged in the sum of five thousand dollars." The prayer of the petition was for $5,000 compensatory, and for $20,000 punitive, damages.

By an amended petition the plaintiff alleged:

"That the associates of the defendants with whom they conspired as alleged in the original petition were representatives of and interested in Race Course Gambling in Kentucky and interested in maintaing the law in force in Kentucky legalizing Race Course Gambling and that in pursuance of said purpose they were interested in and conspired to defeat the plaintiff and nominate the defendant Booles; that the monies so raised by the defendants and their coconspirators were raised for the purpose of publishing and circulating said false and slanderous statements and to hire and influence others to so circulate and publish said statements and to bribe voters to vote against this plaintiff and for the defendant Booles and to defeat this plaintiff in said nomination and to humiliate and degrade him, and that the defendants by the use of said money procured and hired various and divers persons to circulate said false statements and to bribe voters to vote against this plaintiff, and to insist in defeating plaintiff for said nomination. He says that all of said acts were done by the defendants and their conspirators fraudulently and in pursuance of said purpose of defeating said plaintiff for the nomination and slandering and humiliating this plaintiff, and that by reason of said wrongs and illegal conspiracy and the acts done thereunder he has been damaged as alleged in his original petition."

The argument for the appellant is rested upon three propositions, which are well stated in his brief and may be considered in the order adopted by him:

(1) "A combination of two or more persons to do a lawful thing in an unlawful manner, or by unlawful means, is an illegal conspiracy and a person injured thereby has a right of action at law for damages against the joint tort-feasors."

(2) "Statements, oral and written, falsely charging that a candidate for office is misrepresenting his official acts and does not believe in the principles he openly espouses are slanderous, if made orally, and libelous, if made in writing, and actionable per se in either event."

(3) "Depriving an individual of his right to run for office, and to receive the support of every voter who is so inclined, and to be elected, is unlawful, and constitutes an actionable tort."

The only effect of the charge of conspiracy is to fix joint responsibility upon the alleged conspirators, for things done in accomplishing the objects of the alliance, and the plaintiff has no cause of action therefor, unless he has alleged an actionable injury to himself caused by the wrongful or unlawful acts of the conspirators or of one of them, in pursuance of the unlawful combination. 12 C. J. p. 584, sec. 104; Standard Oil Co. v. Doyle, 118 Ky. 662, 82 S. W. 271, 26 Ky. Law Rep. 544, 111 Am. St. Rep. 331; Chambers v. Probst, 145 Ky. 382, 140 S. W. 572, 36 L. R. A. (N. S.) 1207; Louisville & N. R. R. Co. v. Ohio Valley Tie Co., 161 Ky. 222, 170 S. W. 633, reversed 242, U. S. 288, 37 S. Ct. 120, 61 L. Ed. 305; Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997, 22 L. R. A. (N. S.) 607, 128 Am. St. Rep. 492; Leech v. Farmers' Tobacco W. Co., 171 Ky. 791, 188 S. W. 886; Lawrence Trust Co. v. Sun-American Pub. Co., 245 Mass. 262, 139 N. E. 655; Hundley v. L. & N. R. R. Co., 105 Ky. 162, 48 S. W. 429, 20 Ky. Law Rep. 1085, 63 L. R. A. 289, 88 Am. St. Rep. 298; Brewster v. Miller, 101 Ky. 368, 41 S. W. 301, 19 Ky. Law Rep. 593, 38 L. R. A. 505; Ætna Ins. Co. v. Com., 106 Ky. 864, 51 S. W. 624, 21 Ky. Law Rep. 503, 45 L. R. A. 355. Indeed, that much is conceded, but it is earnestly insisted that appellant has alleged a cause of action against the appellees authorizing the recovery of damages. Two types of illegal acts perpetrated by them in carrying out the common design are relied upon by the appellant. The first concerns the charge that appellees, by the illegal use of money, bribed voters to support Booles, and to defeat Shields for the nomination he sought, and the second relates to the contention that the appellees willfully, knowingly, and maliciously spread slanderous and libelous statements about the appellant.

In so far as concerns the allegations respecting the bribery of voters, it is apparent that no cause of action for damages was manifested, and such averments were not appropriate in a case of this character.

The loss of a nomination because of bribery of voters was not such special damage as brought the alleged wrong within that category. Field v. Colson, 93 Ky. 347,

20 S. W. 264, 14 Ky. Law Rep. 315; Taylor v. Moseley, 170 Ky. 599, 186 S. W. 634, Ann. Cas. 1918B, 1125; Walker v. Tucker, 220 Ky. 363, 295 S. W. 138, 53 A. L. R. 547. The remedy for wrongs of that character must be found in other proceedings. Cf. Ky. Statutes, secs. 1586, 1587, 1550-35; Hardin v. Horn, 184 Ky. 548, 212 S. W. 573; Sparkman v. Saylor, 180 Ky. 263, 202 S. W. 649. It is not an actionable injury to the character, person, or property of a candidate for office for his adversary to bribe voters. It is an offense to be redressed in a prosecution by the commonwealth, or in a contest of the nomination where the wrongdoer may be deprived of the fruits of his wrong.

It is true that a voter may maintain an action against persons who wrongfully deprive him of the right to vote. Nixon v. Herndon, 273 U. S. 536, 47 S. Ct. 446, 71 L. Ed. 759; Wiley v. Sinkler, 179 U. S. 58, 21 S. Ct. 17, 45 L. Ed. 84; Giles v. Harris, 189 U. S. 475, 23 S. Ct. 639, 47 L. Ed. 909; Caulfield v. Bullock, 18 B. Mon. 494; Morgan v. Dudley, 18 B. Mon. 693, 68 Am. Dec. 735; Chrisman v. Bruce, 1 Duv. 63, 85 Am. Dec. 603; Wayne v. Venable (C. C. A.) 260 F. 64. But a voter who accepted a bribe would be in pari delicto, and, although himself subject to prosecution, such a person would have no right of action against anybody.

Nor does it follow that the candidate for whom the voter intended to cast his ballot would have a cause of action for damages against a bribe giver because of the loss of the vote of another. The general rule is that where one is directly injured by the wrongful act of another, and others are indirectly, incidentally, or consequentially injured, but not by reason of any natural, contractual, or legal relation, the injuries of the latter are too remote to constitute a basis of recovery, 17 C. J. p. 752, sec. 84; Evans' Adm'r v. Cumberland T. & T. Co., 135 Ky. 66, 121 S. W. 959, 135 Am. St. Rep. 444; Lebanon, Louisville & Lexington T. Co. v. Lanham Lumber Co., 131 Ky. 718, 115 S. W. 824, 21 L. R. A. (N. S.) 115, 18 Ann. Cas. 1066; Gregory v. Brooks, 35 Conn. 437, 95 Am. Dec. 278; Connecticut Mutual Life Ins. Co. v. N. Y. & N. H. R. R. Co,. 25 Conn. 265, 65 Am. Dec. 571; Rockingham M. F. Ins. Co. v. Bosher, 39 Me. 253, 63 Am. Dec. 618; Anthony v. Slaid, 11 Metc. (Mass.) 290.

The exception to the rule is that a malicious or fraudulent injury to one owing a natural, legal, or contrac-

tual duty to another which disabled the injured person from discharging that duty, and which wrong was actuated by a positive design to injure the third person to whom the duty was due, may result in such direct injury to the third party as to entitle him to maintain an action therefor. Gregory v. Brooks, supra; Id., second appeal, 37 Conn. 365.

Plainly a voter is under no such duty to a candidate, as to bring the latter within the letter, the reason, or the scope of the exception mentioned.

The rule which precludes the recovery of uncertain damages is applied and limited to uncertainty as to the fact of damage, and has no relevancy to mere uncertainty as to the extent or measure of damages actually and certainly suffered. The law forbids the recovery of speculative, uncertain, or contingent damages, when they do not necessarily flow from the breach of a duty, but it does not forbid the recovery of such damages as are the certain and proximate result of the wrong, but uncertain or indefinite merely as to the measure or extent of the injury. As expressed by the Supreme Court of Michigan in Allison v. Chandler, 11 Mich. 542:

"But shall the injured party in an action of tort, which may happen to furnish no element of certainty, be allowed to recover no damages (or merely nominal), because he can not show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice. . . .

"Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages can not be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." Gilbert v. Kennedy, 22 Mich. 117.

Or, as aptly expressed in Linen Thread Co. v. Shaw (C. C. A.) 9 F. (2d) 17, 19: "The rule that damages, if

uncertain, cannot be recovered, applies to their nature, and not to their extent. If the damage is certain, the fact that its extent is uncertain does not prevent a recovery.'' 17 C. J. sec. 90 p. 756; Rule v. McGregor, 117 Iowa, 419, 90 N. W. 811; Story Parchment Co. v. Paterson Parchment Paper Co., 51 S. Ct. 248, 75 L. Ed. —, decided February 24, 1931.

It will be seen that a candidate is not the injured party, or within the purpose or purview of the remedy allowed a voter for being deprived wrongfully of his right to vote. Nor was the right of appellant to be a candidate in the primary infringed or affected. That right was fully enjoyed by the appellant. A violation of his right to receive any votes that might have been cast for him but for the wrongful interference of appellees did not result in any injury to his character, person, or property that could be the subject of a suit for damages. The remedy for wrongs of that character, if carried to an extent that affected the result of the election, was for the unsuccessful candidate to institute a contest, where he could protect his own rights, and vindicate the rights of the public as well. His abstract right to be elected was conditioned upon his ability to get a majority of the votes.

Thus we are brought to a consideration of the allegations of the petition respecting slander and libel. Since no special damages of a recoverable nature are alleged (Field v. Colson, supra; Taylor v. Moseley, supra), the issue is reduced to a determination of the character of the spoken and written words alleged as constituting defamatory charges actionable per se.

The pleading contains no allegations of injury or damage to character, but when the words are slanderous or libelous per se, general damages are presumed to have accrued from the wrong done and need not be averred. Newman, Pleading & Practice (3d Ed.) sec. 323, p. 426; Alexander v. Humber, 8 Ky. Law Rep. 619; Louisville & N. R. R. Co. v. Roney, 108 S. W. 343, 32 Ky. Law Rep. 1326; Cumberland T. & T. Co. v. Overfield, 127 Ky. 548, 106 S. W. 242, 32 Ky. Law Rep. 421; Main Jellico Coal Co. v. Young, 160 Ky. 397, 169 S. W. 841; Louisville Gas Co. v. Ky. Heating Co., 132 Ky. 435, 111 S. W. 374, 33 Ky. Law Rep. 912; Mudd v. Rogers, 102 Ky. 280, 43 S. W. 255, 19 Ky. Law Rep. 1329.

Words falsely spoken are actionable per se only when they impute (1) the commission of a crime involv-

ing moral turpitude for which, if true, the accused might be indicted and punished; (2) affliction with an infectious disease likely to exclude the accused from society; (3) unfitness to perform the duties of an office, occupation, or employment, or having a tendency to prejudice him in his trade, calling, or profession; or (4) acts which might tend to disinherit him. Walker v. Tucker, 220 Ky. 363, 295 S. W. 138, 53 A. L. R. 547; Spears v. McCoy, 155 Ky. 1, 159 S. W. 610, 49 L. R. A. (N. S.) 1033; Williams v. Riddle, 145 Ky. 459, 140 S. W. 661, 36 L. R. A. (N. S.) 974, Ann. Cas. 1913B, 1151; Marksberry v. Weir, 173 Ky. 316, 190 S. W. 1108; Baskett v. Crossfield, 190 Ky. 751, 228 S. W. 673; Vanover v. Ritter Lumber Co., 186 Ky. 223, 216 S. W. 366; Baker v. Clark, 186 Ky. 816, 218 S. W. 280.

The spoken words complained of are not set forth, but the substance thereof is said to be statements that appellant, as a member of the Legislature, had voted against the repeal of the pari-mutuel law. It is at once apparent that such a statement does not fall within any of the classes of words that constitute actionable slander. But it is argued that the Act of March 22, 1924, (Ky. Stats., 1930 Ed., sec. 1376n), enlarged the law of slander so as to include in the classes of statements constituting slander any harmful rumors or reports. That act provides a penalty, recoverable by the commonwealth alone, against any person who shall willfully, knowingly, or maliciously repeat or communicate to any person or persons, ''a false rumor or report of a slanderous or harmful nature or which may be detrimental to the character or standing of such person or persons, whether such person is a private citizen or officer or candidate for office.''

The law of slander in civil cases is not augmented abated, or affected in any manner by that act. It simply created on behalf of the commonwealth a right to recover a penalty for the acts there denounced. Cf. Hill v. Halmhuber, 225 Ky. 394, 9 S. W. (2d) 55; Squires v. State of Texas, 39 Tex. Cr. R. 96, 45 S. W. 147, 73 Am. St. Rep. 904. The contention that section 466, Ky. Statutes, in connection with section 1376n, confers upon appellant a right of action, assumes the essential element of such a case. Section 466 provides that, ''A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for

such violation be thereby imposed.'' The statute does not give a right of action to every person against any one violating a statute, but only to persons suffering injury as the direct and proximate result thereof; and then only for such damage as they may sustain. Cf. Mairs v. B. & O. R. R. Co., 175 N. Y. 409, 67 N. E. 901. The question to be determined is whether the appellant was injured by the words uttered about him, and that depends upon the character of the words. He could not be so injured by words not actionable per se, unless he alleged facts showing special damage, which he has not done. Walker v. Tucker, 220 Ky. 363, 295 S. W. 138, 53 A. L. R. 547. If the words were not actionable per se, no damage can be implied.

In the case of Hatchett v. Blacketer, 162 Ky. 266, 172 S. W. 533, the petition alleged an assault and battery committed with a felonious intent. In Burgess & Co. v. Patterson, 139 Ky. 547, 106 S. W. 837, 838, 32 Ky. Law Rep. 624, a letter was involved which contained an imputation of conduct ''reasonably calculated to degrade, disgrace, or render odious the person charged.''

The language of the letter was susceptible to the construction that it contained a charge of larceny against the complainant; and so was held to be libelous per se. The Texas case of Squires v. State, 39 Tex. Cr. R. 96, 45 S. W. 147, 73 Am. St. Rep. 904, arose in a prosecution under the statute, and was not a civil action for damages.

It is plain that no cause of action for slander was stated in the petition.

Finally, it is said that the newspaper publication was libelous per se, and rendered the petition invulnerable to an attack by demurrer. The test to determine whether a written publication is libelous per se has been variously expressed. The general proposition is that words, written or printed, are libelous and actionable per se, justifying a recovery without allegations of special damages, if they tend to degrade and disgrace the person about whom they are written or printed, or tend to expose him to public hatred, ridicule, contempt, aversion, or disgrace, or to induce an evil opinion of him in the minds of right-thinking persons and to deprive him of their friendly intercourse and society. 36 C. J. sec. 28, p. 1162; Boyd v. Hutton, 196 Ky. 512, 244 S. W. 880; Thompson v. Adelberg, 181 Ky. 487, 205 S. W. 558, 3

A. L. R. 1594; Foster-Milburn v. Chinn, 134 Ky. 424, 120 S. W. 364, 34 L. R. A. (N. S.) 1137, 135 Am. St. Rep. 417.

In order to be libelous per se, it is not essential that the words involve an imputation of crime, or otherwise impute the violation of laws, involving moral turpitude, or immoral conduct. But defamatory words, to be libelous per se, must be of such a nature that the court can presume as a matter of law that they do tend to disgrace and degrade the person, or to hold him up to public hatred, contempt, or ridicule, or to cause him to be shunned and avoided. Riley v. Lee, 88 Ky. 603, 11 S. W. 713, 11 Ky. Law Rep, 586, 21 Am. St. Rep. 358; Ranson v. West, 125 Ky. 459, 101 S. W. 885, 31 Ky. Law Rep. 82; United Mine Workers v. Cromer, 159 Ky. 608, 167 S. W. 891; Williams v. Riddle, 145 Ky. 461, 140 S. W. 661, 36 L. R. A. (N. S.) 974, Ann. Cas. 1913B, 1151; Smallwood v. York, 163 Ky. 145, 173 S. W. 380, L. R. A. 1915D, 578; Axton-Fisher Co. v. Evening Post Co., 169 Ky. 64, 183 S. W. 269, L. R. A. 1916E, 667, Ann. Cas. 1918B, 560; Reid v. Nichols, 166 Ky. 428, 179 S. W. 440; Commercial Tribune Co. v. Haines, 228 Ky. 486, 15 S. W. (2d) 306.

The charge in the newspaper article now involved is simply that the plaintiff as a member of the Legislature voted against the repeal of an existing law. Certainly it cannot be said that voting for or against the repeal of a statute of itself raised an inference of libelous import. But it is argued that the plaintiff had announced a contrary position and the publication impugned his sincerity and in effect imputed to him the attributes of a hypocrite. It is libelous per se to charge falsely in writing or printing that a person is a hypocrite. 36 C. J. sec. 42, p. 1170; Newby v. Times-Mirror Co., 173 Cal. 387, 160 P. 233, Ann. Cas. 1917E, 186; Knox v. Meehan, 64 Minn. 280, 66 N. W. 1149.

But the article in question makes no charge of hypocrisy against appellant. It simply asserts as a fact that Dr. Shields voted against the repeal of the parimutuel law and in favor of legalized gambling. There is no intimation that he did not vote honestly according to his sentiments, or the wishes of his constituents, or that he had misrepresented his position, or that he had been guilty of reprehensible conduct. The statement had no inherent tendency to affect his character or reputation, since such a vote was within the province of any representative confronted with the problem.

It was a question upon which men of character held opposite opinions, and to say that a representative voted either way was not a libel of him, even though the statement was not true. It is said, however, that the article in effect misrepresented the public record of the plaintiff as an official, and a mere mistatement as to how a representative voted is necessarily libelous per se.

In Eikoff v. Gilbert, 124 Mich. 353, 83 N. W. 110, 51 L. R. A. 451, a circular addressed to the voters stated unqualifiedly that a candidate for election to the Legislature had championed measures opposing the moral interests of the community. It referred to no special vote and did not express a mere opinion, but the matter was stated as a fact, and, for that reason, was held to be libelous per se. In addition to the statement indicated, other important charges were made in a circular accompanying he one containing the other charge described.

The court concluded that the charges as a whole were meant to imply that the plaintiff was an indecent and immoral man, and, so construed, found no difficulty in holding the words libelous per se.

In Kutcher v. Post Printing Co., 23 Wyo. 178, 147 P. 517, 518, 149 P. 552, it was held that any publication imputing want of integrity on the part of a public official, or a lack of qualifications, or a dereliction of duty, is libelous per se. That case involved a newspaper publication which stated in headlines, ''Dive Reopens . . . Toomer Defies Order to Close Club,'' and which submitted questions implying that the mayor had misrepresented his official actions with reference to closing the club, and that he was not sincere in the conduct of the duties of his office, and was not discharging such duties with fidelity, but that he was partial in the discharge of his official duties, and was protecting Toomer in unlawful conduct, while others had been banished, and was permitting Toomer to sell liquor on Sunday.

In Negley v. Farrow, 60 Md. 158, 45 Am. Rep. 715, a newspaper libel was involved. The article was not set out, but the court said it ''charges the plaintiff, elected as a republican senator from Washington County, with being under the influence and control of a corrupt democratic ring—with having participated in the republican caucus in nominating Mr. Pratt as Treasurer, and afterwards with having voted for Mr. Compton, the demo-

cratic ring candidate—with having aided the ring senators in defeating the bill for repealing the Act authorizing the publication of the laws in newspapers, and by so doing, had proved false to his political obligations and a traitor to his party, and had brought dishonor upon the republicans of Washington County, who had elected him to the Senate. It further charges him with having a contract to furnish stone to the canal, which was given to him by . . . the head and front of the democratic ring, because he was a senator, and 'had a vote to give in the Senate,' and for no other reason." The court said:

> "It can hardly be necessary to say that such charges as these, against the official conduct of the plaintiff, and the imputation of the base and sordid motives by which such conduct was governed, were calculated to injure his reputation and expose him to the contempt of all honorable men.'

In Powers v. Dubois, 17 Wend. (N. Y.) 63, it was held that a publication concerning a candidate for an elective office was libelous per se. It charged that he had bartered away a public improvement (e. g., a railroad) in which the constituency for whose suffrages he was a candidate had a deep interest for the charter of a bank to himself and his associates; (b) and that, if elected, he would be an unfaithful representative and act counter to the interests of his constituents; and (c) that he would by criminal indifference or treachery seriously retard or totally prevent the construction of such railroad, and that he would do all this from motives of personal political aggrandizement or to accomplish some sinister or dishonest purpose or to gratify his private malice.

In Peterson v. Western Union Tel. Co., 65 Minn. 18, 67 N. W. 646, 33 L. R. A. 302, an action was based upon a telegram signed "Many Republicans," and sent to plaintiff reading:

> "Slippery Sam, your name is pants," The court said: 'The message was, on its face, fairly susceptible of a libelous meaning. The sting is in the word 'slippery.' This word, when used as descriptive of a person, has a well-understood meaning. It means, when so used, that the person to whom it is applied cannot be depended on or trusted;

that he is dishonest, and apt to play one false. Cent. Dict. If such is the meaning of the word as used in this message,— and of this the jury were the judges, —it was clearly libelous, because, if a man is dishonest, and apt to play one false, he merits the scorn and contempt of all honorable men. To falsely publish of a man that he is slippery tends to render him odious and contemptible. Such a publication is a libel. Wilkes v. Shields, 62 Minn. 426, 64 N. W. 921.''

It will be noted that none of these cases support the argument for appellant that it was libelous per se to state incorrectly how a representative had voted upon a particular measure. Such a misrepresentation, however reprehensible, is not libelous per se, since it fails to respond to any of the tests prescribed to determine when such character may be ascribed to a publication. The article does not intimate or imply immoral, indecent, or other culpable conduct falling within any classification of publications deemed defamatory. It follows that the article was not actionable per se, and the court did not err in sustaining the demurrer to the petition as amended.

The judgment is affirmed.

The whole court sitting.